

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| MONTE YAGER, JR., | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD77868 |
| | ) | |
| SHELTER GENERAL INSURANCE | ) | FILED: May 5, 2015 |
| COMPANY and SHELTER MUTUAL | ) | |
| INSURANCE COMPANY , | ) | |
| Respondents. | ) | |

**Appeal from the Circuit Court of Clinton County**
**The Honorable Richard B. Elliott, Judge**

**Before Division Four: Alok Ahuja, C.J., Joseph M. Ellis, J., and Marco A. Roldan, Sp. J.**

Monte Yager, Jr., was injured in a 2011 motor vehicle accident. He received partial compensation for his injuries from an insurance policy covering the car that struck his motorcycle. Yager then filed an equitable garnishment action, seeking additional insurance coverage under policies which insured other vehicles owned by the car driver's family. The circuit court concluded that there was no coverage under the other policies. Yager appeals. We affirm.

## Factual Background

On August 27, 2011, Skylar Trail struck Yager while driving in Clinton County.  Skylar[1] was driving a 1994 Honda Civic owned by her parents, Melvin and Tina Trail.  Yager was riding a motorcycle.

The Civic was insured by Shelter General Insurance Company.  The Civic policy was subject to a $50,000 per-person limit of liability for bodily injury claims.  Skylar was named as an "additional listed insured" on the Civic policy; her parents Melvin and Tina were listed as "named insureds."  Although Skylar did not own a vehicle, the Trail family owned three other vehicles insured by Shelter:  a 2000 Ford F-350, a 2010 Kia Forte, and a 1998 Ford Mustang.[2]  We refer to the policies insuring these other vehicles – none of which were involved in the August 2011 accident – as the "other Shelter policies."  As with the Civic policy, Melvin and Tina Trail are listed as "named insureds" on each of the other Shelter policies, and Skylar Trail is listed as an "additional listed insured" on each policy.

Yager and Shelter entered into an agreement pursuant to §§ 537.060 and 537.065, RSMo, under which Yager agreed not to seek recovery for his injuries from the Trails' personal assets, but instead only to seek recovery from their insurance coverage.  The circuit court approved a stipulated judgment against Skylar Trail in favor of Yager.  Shelter paid Yager $50,000 under the Civic policy, equal to the per-person policy limit applicable to bodily injury claims.  Shelter denied liability, however, under the other Shelter policies.  Yager then filed an equitable

---

[1]     Skylar Trail and her parents share the same surname.  To avoid confusion, we sometimes refer to the Trails by their first names.  We intend no familiarity or disrespect.

[2]     The policies insuring the Honda Civic and Ford Mustang were issued by Shelter General Insurance Company, while the policies insuring the Ford F-350 and Kia Forte were issued by Shelter Mutual Insurance Company.  Both Shelter General and Shelter Mutual are respondents in this appeal.  Because the issues presented do not require us to distinguish between the two entities, we refer to them collectively as "Shelter."

garnishment action pursuant to § 379.200, RSMo against Shelter, seeking further recovery under the other Shelter policies.

Shelter filed a motion for summary judgment, which was denied. The parties later appeared before the circuit court for a bench trial. Yager tendered to the court a joint stipulation of facts, and copies of the four Shelter insurance policies. Neither party presented additional evidence. The circuit court's judgment concluded that Yager "was not entitled to receive bodily injury liability coverage under any of the Other Shelter Policies because Skylar Trail did not meet the definition of an 'insured' under the Other Shelter Policies." The court concluded that Skylar was not entitled to coverage under the other Shelter policies because at the time of the accident she was not operating the "described auto" listed in any of the other Shelter policies; nor was she driving a "non-owned auto."

Yager appeals.

**Analysis**

Yager argues that the other Shelter policies each provide coverage for the August 2011 accident in which he was injured, and that the limits of the other Shelter policies should be "stacked" to provide coverage equal to the policies' combined per-person limits of liability for bodily injury claims.

Resolution of this appeal requires us to interpret the language of the other Shelter policies in light of the facts to which the parties stipulated in the circuit court. This presents solely a question of law, which we review *de novo*. "When a case is tried on stipulated facts, the only issue we review on appeal is whether the trial court reached the proper legal conclusions from the stipulated facts." *City of St. John v. Brockus*, 434 S.W.3d 90, 93 (Mo. App. E.D. 2014) (citation and internal quotation marks omitted); *accord*, *Dry v. United Fire & Cas. Co.*, 420 S.W.3d 593, 594 (Mo. App. S.D. 2013).

Similarly, "[w]here . . . resolution of the case involves the interpretation of an insurance contract, we give no deference to the circuit court as contract interpretation is a question of law that we review *de novo*." *Blumer v. Auto. Club Inter-Ins. Exch.*, 340 S.W.3d 214, 218 (Mo. App. W.D. 2011); *see also*, *e.g.*, *Taylor v. Bar Plan Mut. Ins. Co.*, No. SC94250, 2015 WL 1094848, at *2 (Mo. banc March 10, 2015) ("Interpretation of an insurance policy and the determination of whether provisions are ambiguous are questions of law, subject to *de novo* review").

> In construing the terms of an insurance policy, this Court applies the meaning which would be attached by an ordinary person of average understanding if purchasing insurance. The general rule in interpreting insurance contracts is to give the language of the policy its plain meaning. If language in an insurance policy is ambiguous, this Court resolves the ambiguity against the insurer-drafter. An ambiguity exists only when a phrase is reasonably open to different constructions.
>
> Absent an ambiguity, however, Missouri appellate courts do not resort to canons of construction. If the policy's language is unambiguous, it must be enforced as written. In addition, courts may not unreasonably distort the language of a policy or exercise inventive powers for the purpose of creating an ambiguity where none exists. Definitions, exclusions, conditions, and endorsements are necessary provisions in insurance policies. If they are clear and unambiguous within the context of the policy as a whole, they are enforceable.

*Allen v. Continental W. Ins. Co.*, 436 S.W.3d 548, 553-54 (Mo. banc 2014) (citations and internal quotation marks omitted).

The relevant terms of the other Shelter policies are identical. The insuring clause of each policy provides that

> Subject to the limits of **our** liability for [the bodily injury and property damage] coverages stated in the **Declarations**, **we** will pay damages for an **insured**, if
>
> (a)     that **insured** is legally obligated to pay those **damages**; and
>
> (b)     the **accident** that caused those **damages** arose out of the **ownership** or **use** of the **described auto** or a **non-owned auto**.

4

The bold-faced terms are specifically defined in the policies. For purposes of the present dispute, the critical definitions are the definitions of an "insured," the "described auto," and a "non-owned auto."

Melvin and Tina Trail are listed as "named insureds" on each of the other Shelter policies, while Skylar is listed as an "additional listed insured" in each policy. Skylar falls within the policies' definition of a "Category 2" insured. With respect to "Category 2," the policy provides that "**[i]ndividuals** listed in the **Declarations** as an 'additional listed insured' who do not **own** a **motor vehicle . . . [¶]** are **insureds** for **claims** resulting from their **use** of the **described auto** and **non-owned autos**."

Under both the insuring agreement and the definition of "Category 2" insureds, Skylar was entitled to coverage under the other Shelter policies for bodily-injury liability arising out of her use of the "described auto" or a "non-owned auto." The other Shelter policies define the "described auto" as "the vehicle described in the **Declarations**, but only if a **named insured owns** that vehicle." Yager does not contend that the Civic which was involved in the accident was a "described auto" under any of the other Shelter policies.

The circuit court also concluded that the Civic was not a "non-owned auto" under the other Shelter policies. The policies define a "non-owned auto" as

any **auto** being **used**, **maintained**, or **occupied** with **permission**, other than:

(a)     the **auto** listed in the **Declarations**;

(b)     an **auto owned** by any **insured** or a **resident** of any **insured's** household; or

(c)     an **auto** that **you** or any **resident** of **your** household has **general consent** to **use.**

The Civic is unambiguously excluded from the definition of a "non-owned auto" by virtue of sub-paragraph (b) of this definition. The Civic was in fact "owned by any insured" –

5

namely, by Skylar's parents Melvin and Tina Trail. Although Skylar may be the relevant "insured" for purposes of obtaining coverage for the August 2011 accident, sub-paragraph (b) plainly states that a vehicle is not a "non-owned auto" if it is owned by "*any*" insured, not just by the insured seeking coverage. The word "any" is commonly used, and understood, by laypersons.[3] Other cases recognize that a reference to "any insured" in a policy exclusion unambiguously defeats coverage where one insured's actions fall within the exclusion, even though a different insured is seeking policy coverage. *See Am. Family Mut. Ins. Co. v. Copeland-Williams*, 941 S.W.2d 625, 628-30 (Mo. App. E.D. 1997); *Am. Family Mut. Ins. Co. v. Moore*, 912 S.W.2d 531, 534-35 (Mo. App. W.D. 1995). As used in the "non-owned auto" definition, the phrase "owned by any insured" unambiguously excludes coverage for liabilities arising from the use of a vehicle, if one or another of the several persons listed as an "insured" owns the vehicle in question, even though the vehicle owner is not the insured seeking coverage.

Even if we focus on Skylar as the relevant insured, sub-paragraph (b) still excludes the Civic from the definition of a "non-owned auto." Sub-paragraph (b) provides that a vehicle is not a "non-owned auto" if it is "**owned** by . . . a **resident** of any **insured's** household." In this case, it is undisputed that Melvin and Tina Trail are residents of Skylar Trail's household. Because the Civic is "owned by a resident of [Skylar Trial]'s household," it is excluded from the definition of a "non-owned auto" for this additional reason.[4]

---

[3] The other Shelter policies provide that words which are not defined in the policies should be given "their common dictionary meaning." The word "any" is defined as "one indifferently out of more than two," "one or some indiscriminately of whatever kind"; the dictionary explains that "any" is "used as a function word esp[ecially] in interrogative and conditional expressions to indicate one that is not a particular or definite individual of the given category but whichever one chance may select." WEBSTER'S THIRD NEW INT'L DICTIONARY at 97 (1993 unabridged ed.).

[4] The Civic would also be excluded from the definition of a "non-owned auto" by virtue of sub-paragraph (c) of the definition, *if* Skylar Trail had the "general consent to use" the Civic. The other Shelter policies define "general consent" to mean "the authorization of the **owner** of an **auto** for another to **use** it on one or more occasions without the necessity of obtaining **permission** for each **use**. **General**

The Southern District found a very similar definition of a "non-owned auto" to be "plain and unambiguous," holding that there was "no conflict between the definition of non-owned automobile and the meaning which would reasonably be understood by the average lay person." *Schuster v. Shelter Mut. Ins. Co.*, 857 S.W.2d 381, 384 (Mo. App. S.D. 1993).[5]

The Missouri Supreme Court recently explained why auto liability insurance policies often exclude coverage for other vehicles owned by an insured:

> The purpose of the "drive other cars" provision in an automobile liability policy is to cover occasional or incidental use of other cards [sic] without the payment of an additional premium, but to exclude the habitual use of other cars, which would increase the risk on the insurance company without a corresponding increase in the premium. [¶] That is, one cannot simply buy a policy of insurance on one vehicle and then argue that the policy covers other vehicles that the insured also owns but chose not to insure. The policy only provides coverage of owned cars that are insured under a policy as well as an insured's operation of other cars so long as they are not owned and uninsured by the policy.

*Dutton v. Am. Family Mut. Ins. Co.*, 454 S.W.3d 319, 323 (Mo. banc 2015) (citation, emphasis, and internal quotation marks omitted); *see also*, *e.g.*, *Shelter Mut. Ins. Co. v. Sage*, 273 S.W.3d 33, 39 (Mo. App. W.D. 2008) ("the purpose of the non-owned automobile clause was to cover occasional or incidental *use* of other cars without the payment of an additional premium, but to exclude coverage for habitual *use* of other cars, which would increase the risk on the insurance

---

**consent** can be expressed or implied." Mysteriously, the parties did not develop evidence in the trial court concerning whether Skylar had "general consent" to use her parents' Honda Civic.

[5] The definition at issue in *Shuster* provided that

**Non-owned auto** means any **auto** other than

(a)     the described auto, or

(b)     an **auto** owned in whole or in part by, or furnished or available for regular use of, either **you** or any resident of **your** household.

857 S.W.2d at 384.

company without the corresponding increase in the premium.") (citations and internal quotation marks omitted).[6]

Yager argues that it is contrary to the expectations of a reasonable insured to exclude the Civic from the category of "non-owned autos," when the relevant insured – Skylar Trial – did not own it (or any car, for that matter). Yager argues that excluding the Civic from the definition of a "non-owned auto" is inconsistent with the other Shelter policies' definitions of "own" and "owner," both of which refer to the holding of legal title or a leasehold interest. Yager argues that "by virtue of the definition of 'owner,' [Skylar] is not an owner of the Honda Civic because she did not have title to it." App. Br. at 16. Thus, Yager argues, there is an ambiguity, because "[n]o reasonable person buying insurance would ever believe they were not a non-owner of an auto they did not own." *Id.*

We recognize that

the fact that a definition is clear and unambiguous does not end the inquiry as to the existence of an ambiguity until the court has reviewed the "whole policy" to determine whether there is contradictory language that would cause confusion and ambiguity in the mind of the average policy holder.

*Miller v. Ho Kun Yun,* 400 S.W.3d 779, 786 (Mo. App. W.D. 2013) (citations omitted). This is not a case, however, in which the policy as a whole injects ambiguity into the clear and unambiguous definition of a "non-owned auto."

Yager is correct that, under the other Shelter policies' definitions, Skylar Trail did not "own," and was not the "owner" of, the Civic. But as we have explained above, the policies'

---

[6]     Yager argues that, if the "non-owned auto" definition is read to exclude the Civic, "[i]t is difficult to imagine a vehicle that would meet Shelter's definition." Reply Br. at 5. To the contrary, however, examples of the incidental use of non-owned vehicles which the other Shelter policies might cover "are easy to imagine: for example, the insured's use of a rental car, or of a vehicle belonging to a friend, when the insured is traveling, when the insured's vehicle is under repair, or when the insured requires greater passenger or cargo capacity for a special errand." *Dutton v. Am. Family Mut. Ins. Co.*, No. WD74940, 2014 WL 211453, at *13 (Mo. App. W.D. 2014) (Ahuja, J., dissenting).

definition of a "non-owned auto" does not require that *the insured seeking coverage* "own" the accident vehicle. Instead, the policies exclude a vehicle from the definition of a "non-owned auto" if it is "owned by _any_ insured," or is "owned by a resident of any insured's household." Given that Skylar and other family members are all insured together under the other Shelter policies, it would not be unexpected that a vehicle owned by any one of them would be excluded from the definition of a "non-owned auto" – particularly when the unambiguous policy language says exactly that. To adopt the reading Yager advocates would require us to rely on the definitions of "own" and "owner," yet ignore the definition of "non-owned auto." "The entire policy and not just isolated provisions must be considered," however. *Floyd-Tunnell v. Shelter Mut. Ins. Co.*, 439 S.W.3d 215, 217 (Mo. banc 2014) (citing *Allen,* 436 S.W.3d at 554). Under Yager's reading, the other Shelter policies would insure Skylar for liabilities arising from her use of any motor vehicle whatsoever. That is not what the policies say.

Yager also relies on the Supreme Court's decision in *Manner v. Schiermeier*, 393 S.W.3d 58 (Mo. banc 2013). *Manner*, however, does not aid Yager's position. In *Manner*, Nathaniel Manner was involved in an accident while riding a motorcycle. *Id.* at 60. At the time of the accident, Manner was in the process of purchasing the motorcycle from his uncle. *Id.* at 62. Although Manner drove and insured the motorcycle, his uncle retained the title. *Id.* Manner sought coverage for his injuries under the underinsured motor vehicle coverage of policies insuring three *other* motor vehicles. *Id.* at 60-61. The insurer denied coverage, asserting that the motorcycle was a vehicle "owned" by Manner, which was not specifically insured under the policies in question. *Id.* at 61. The insurer argued that "possession of and an interest in the [motorcycle] sufficient to allow [Manner] to obtain an insurance policy on it" was sufficient to constitute "ownership," despite the fact that Manner "did not have title to the vehicle or other

9

indicia or ownership of it." *Id.* at 62. The Supreme Court disagreed, holding that Manner's interest in the motorcycle did not unambiguously constitute "ownership" sufficient to trigger the policies' exclusions. *Id.* at 62-63.

*Manner* has no relevance to this case. In *Manner*, "[t]he insurers chose not to define the term 'owned' in the policies," and the Court was therefore left to rely on the common understanding of "ownership." *Id.* at 60, 62. The Court recognized that "the insurance policies at issue could have defined 'owned,' for purposes of the underinsured motorist endorsement, to include all those who have an insurable interest in the vehicle." *Id.* at 62 (footnote omitted).

In contrast to *Manner*, the terms "own" and "owner" are defined in the other Shelter policies, and no one disputes that, under those definitions, the Civic was "owned" by Skylar Trail's parents. The issue in this case is not how "ownership" should be defined. Instead, the issue here is whether Melvin and Tina Trail's admitted "ownership" of the Civic excludes if from the definition of a "non-owned auto." *Manner* does not address the critical issue in this case.

Yager also argues that the other Shelter policies' "declarations page[s] promise[ ] coverage to Skylar Trail but do[ ] not in any way describe[ ] the limitations on that coverage that are present within the definition of 'non-owned auto.'" App. Br. at 20. According to Yager, there is an ambiguity that must be resolved in his favor, "because the declarations page indicates coverage in one amount that [Shelter] tries to avoid paying based on provisions contained elsewhere in the policy." *Id.* at 17.

There are at least two critical flaws in this argument. First, an examination of the declarations pages of the other Shelter policies does not given any indication that the policies' provide *any* coverage for vehicles other than the described autos. We fail to see how a

reasonable insured reviewing the declarations pages of the other Shelter policies could conclude that the policies provided coverage for other vehicles owned by members of the Trail family; frankly, there is nothing on the declarations pages which would alert a reader that the policies provide coverage even for the use of "non-owned autos."

Second, Yager is simply mistaken in arguing that the coverage summary provided on a policy's declarations page can create an ambiguity when construed in connection with the policy's actual terms. It is true that "[i]f a contract promises something at one point and takes it away at another, there is an ambiguity." *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 133 (Mo. banc 2007). The Supreme Court has emphasized, however, that "[i]nsurance policies are read as a whole, and the risk insured against is made up of both the general insuring agreement as well as the exclusions and definitions." *Dutton*, 454 S.W.3d at 324 (citation and internal quotation marks omitted). In particular, the Court has stressed that "policies' declarations pages do not grant any coverage. The declarations state the policy's essential terms in an abbreviated form, and when the policy is read as a whole, it is clear that a reader must look elsewhere to determine the scope of coverage." *Floyd-Tunnell*, 439 S.W.3d at 221 (citations omitted).[7]

In short, the other Shelter policies unambiguously exclude coverage for liabilities arising from Skylar's use of the Honda Civic owned by her parents. Because there is no coverage for the August 2011 accident under the other Shelter policies, we need not address Yager's separate argument that coverage under the policies should be "stacked" or aggregated. *Dutton*, 454 S.W.3d at 321 n.2 (where "there is only one applicable policy," "the stacking issue is

---

[7] Yager contends that this Court's decision in *Fanning v. Progressive Northwestern Insurance Co.*, 412 S.W.3d 360 (Mo. App. W.D. 2013), holds that an ambiguity may exist where coverage is described more broadly on a policy's declarations page than in the policy itself. *Fanning* must be construed consistently with the Supreme Court's later decisions in *Dutton* and *Floyd-Tunnell*, however.

irrelevant"); *Bush v. Shelter Mut. Ins. Co.*, 412 S.W.3d 336, 341 (Mo. App. W.D. 2013) ("Before stacking can be an issue, there must first be applicable coverages to stack").

## Conclusion

We affirm the circuit court's judgment.

_____
Alok Ahuja, Chief Judge

All concur.

12