**Corey CARTER, Respondent,**

v.

**SHELTER MUTUAL INSURANCE COMPANY, Appellant.**

**No. ED 104654**

Missouri Court of Appeals, Eastern District, DIVISION TWO.

FILED: March 7, 2017

Rehearing Denied April 27, 2017

Seth G. Gausnell, Thomas G. Wilmowski, Jr., St. Louis, Missouri, for Appellant.

Kelsy Simon Vollmer, Gonzalo Fernandez, St. Louis, Missouri, for Respondent.

ROY L. RICHTER, Judge

Shelter Mutual Insurance Company ("Shelter") appeals from the trial court's judgment in favor of Corey Carter ("Carter") in the amount of $100,000 pursuant to the uninsured motor vehicle liability coverage of two vehicle insurance policies. We reverse and remand.

## I.  Background

On April 4, 2012, Carter was involved in a motor vehicle accident while operating a 2002 Chevrolet Impala ("Impala"). There are two insurance policies at issue: one policy covering the Impala and a second policy covering a 2006 Pontiac Torrent ("Torrent"). The Impala is titled solely in the name of Carter's mother, Pam Carter ("Mother"), and the Torrent is jointly titled in the name of Carter and Mother. Under both policies, Mother is the only name listed under the heading of "Named Insured" on the Auto Policy Declarations and Policy Schedule ("Declarations Page"). However, Mother and Carter are both list-

ed under the "Additional Listed Insured" heading on each policy.

Both policies provide uninsured motorist coverage depending on the category of the insured. Category A provides $50,000 for insureds defined as "You," "Relatives," and "Additional Listed Insured," while Category B provides $25,000 for drivers of the policy's described vehicle, not included in Category A, to satisfy the minimum limit of uninsured motorist coverage.

The trial court entered judgment in favor of Carter providing coverage of $50,000 under each policy for a total coverage of $100,000. This appeal follows.

## II. Discussion

Shelter's sole point on appeal claims that the trial court erred in entering judgment in favor of Carter for $100,000 because Carter is only entitled to $25,000 in uninsured motor vehicle liability coverage in that Carter's absence from the Name Insured section of the Declarations Page and ownership of another vehicle only qualifies as a Category B insured under the Impala policy and does not qualify as a Category A or Category B insured under the Torrent policy.

### A. Standard of Review

The interpretation of an insurance policy is a question of law that this Court reviews *de novo*. Dutton v. Am. Fam. Mut. Ins. Co., 454 S.W.3d 319, 322 (Mo. banc 2015) (citing Rice v. Shelter Mut. Ins. Co., 301 S.W.3d 43, 46 (Mo. banc 2009)). When reviewing *de novo*, no deference is given to the trial court's decision. Boulevard Inv. Co. v. Capitol Indemn. Corp., 27 S.W.3d 856, 858 (Mo. App. E.D. 2000).

### B. Policy Coverage

■ Shelter argues that the trial court erred in entering judgment in favor of Carter for the amount of $100,000 because Carter does not qualify as an insured motorist under the 2002 Impala and 2006 Torrent insurance policies. Shelter contends that because Carter is not listed as a Named Insured and owns another vehicle, he did not qualify as a Category A insured under the Impala policy. Additionally, Shelter argues that Carter is not covered by the Torrent policy because the accident occurred while driving the Impala, which was not the policy's "described auto." We agree in part.

■ When interpreting an insurance policy, the language should be given its plain meaning. Melton v. Country Mut. Ins. Co., 75 S.W.3d 321, 324 (Mo. App. E.D. 2002). Although policies contain both grants of coverage and exclusions, we must "reconcile conflicting clauses in a policy so far as their language reasonably permits." Taylor v. Owners Ins. Co., 499 S.W.3d 351, 357 (Mo. App. W.D. 2016) (quoting Todd v. Missouri United Sch. Ins. Council, 223 S.W.3d 156, 162–63 (Mo. banc 2007)). However, if the language of the policy is ambiguous, we resolve that ambiguity against the insurer. Allen v. Cont'l W. Ins. Co., 436 S.W.3d 548, 554 (Mo. banc 2014). Further, we construe the terms of an insurance policy by applying "the meaning which would be attached by an ordinary person of average understanding ... purchasing insurance." Yager v. Shelter Gen. Ins. Co., 460 S.W.3d 68, 71 (Mo. App. W.D. 2015). Language is ambiguous if it is reasonably open to different constructions. Am. Family Mut. Ins. Co. v. Ragsdale, 213 S.W.3d 51, 55 (Mo. App. W.D. 2006). An insurance policy must be enforced according to its terms when no ambiguities are found. Melton, 75 S.W.3d at 324. "A court may not create an ambiguity, however, to distort policy language and enforce a construction it feels is more appropriate." Taylor v. Bar Plan Mut. Ins. Co., 457 S.W.3d 340, 344 (Mo. banc 2015).

While Carter is not explicitly listed as a named insured on the Declarations Page, his inclusion under "Additional Listed Insured" does not create an ambiguity when considered with the definitions of covered insureds outlined in the terms of the policy. Missouri courts have noted that the "mere presence of an exclusion does not render an insurance policy ambiguous." Floyd–Tunnell v. Shelter Mut. Ins. Co., 439 S.W.3d 215, 221 (Mo. banc 2014). In Floyd, the Missouri Supreme Court found no ambiguity in an insurance policy despite an owned-vehicle exclusion reducing the coverage below the limits on the declarations sheet when insured was injured while occupying an owned-vehicle not covered by the policy. Id. The Court noted that a policy's declarations sheet is "introductory and merely summarizes the essential terms of the policy." Id. at 221 n.9. The Court also stressed that a declarations sheet alone does not grant coverage and should not be read in isolation: "The declarations state the policy's essential terms in an abbreviated form, and when the policy is read as a whole, it is clear that a reader must look elsewhere to determine the scope of coverage." Id. at 221.

When reading the policy as a whole, this Court has recognized that insurance contracts are not prohibited from "set[ting] forth the maximum amount the insurer will pay in one part, then stipulate[ing] the circumstances under which the insurer may lower the maximum amount it will pay, so long as all considered sections contain plain and unambiguous terms, and reading them together does not create an ambiguity." Windsor Ins. Co. v. Lucas, 24 S.W.3d 151, 154 (Mo. App. E.D. 2000). Specifically, the Court stated that a policy's use of definitions is an acceptable and enforceable form of limiting coverage:

> While a broad grant of coverage in one provision that is taken away by a more limited grant in another may be contra-

dictory and inconsistent, the use of definitions and exclusions is not necessarily contradictory or inconsistent .... Definitions, exclusions, conditions and endorsements are necessary provisions in insurance policies. If they are clear and unambiguous within the context of the policy as a whole, they are enforceable.

Floyd, 439 S.W.3d at 221 (quoting Todd v. Missouri United Sch. Ins. Council, 223 S.W.3d 156, 162–63 (Mo. banc 2007)).

Here, the policy allows $50,000 in uninsured motorist coverage for individuals that qualify as a Category A insured and $25,000 for individuals that qualify as a Category B insured. Category A includes three subcategories of insureds: "You," "Relatives," and "Additional Listed Insured." Parties agree that Carter does not qualify as a "Relative" or "Additional Listed Insured" under the Impala policy because both subcategories' definitions specify that the individual seeking coverage cannot own another motor vehicle. The Torrent is titled in the name of Carter and Mother; therefore, Carter's ownership of another vehicle prevents him from qualifying for coverage as a "Relative" or "Additional Listed Insured" under the Impala policy. Thus, in order to qualify as a Category A insured, Carter must be determined to fall under the policy's definition of "You." The policy expressly defines "You" as "any person listed as a named insured in the Declarations and, if that person is an individual, his or her spouse." The policy defines a "Named Insured" as "any person listed in the Declarations under the heading 'Named Insured'. *Persons listed under other headings are not named insureds unless they are also listed under the heading 'Named Insured.'* "

Although the Declarations Page includes Carter as an Additional Listed Insured, the definitions of Category A and Catego-

ry B insureds in the terms and conditions clearly and unambiguously stipulate the circumstances in which the insurer will provide lower coverage by defining each subcategory. Applying the plain meaning of the defined terms listed in the policy, Carter does not qualify as "You" under Category A of the Impala policy. Carter fails to qualify as a Named Insured on either policy because he is not included under the Named Insured heading. Despite his listing under Additional Listed Insured, Carter does not fit the clear and plain definition of "You" as defined by the terms of the policy. Moreover, the definitions directly address that the inclusion under another headings of the Declarations Page does not qualify an individual as a Named Insured without actual listing under the heading of Named Insured.

As noted above, Carter's inclusion on the Torrent's title precludes him from qualifying as a "Relative" or "Additional Listed Insured." Instead, Carter must rely on the limited coverage provided by Category B insureds, which includes all drivers of the policy's described vehicle who were not included in Category A. Carter was driving the Impala during the accident and was not included in Category A; therefore, he satisfies the definition of a Category B insured and is entitled to $25,000 under the Impala policy.

Similar analysis is applied when interpreting the Torrent insurance policy. The Missouri Supreme Court stated that "when an insured has two separate policies containing uninsured motorist clauses, effect shall be given to both coverages without reduction or limitation by policy provisions, and that both coverages are available to those insured thereby . . . ." Cameron Mut. Ins. Co. v. Madden, 533 S.W.2d 538, 542 (Mo. banc 1976). Applying Section 379.203 (RSMo. 2000), this Court has determined that "uninsured motorist protec-

tion inures to an individual insured for bodily injury inflicted by the tortious act of an uninsured motorist, rather than to a particular vehicle." Adams v. Julius, 719 S.W.2d 94, 96 (Mo. App. E.D. 1986).

The Torrent insurance policy, therefore, may be applied, in addition to the $25,000 coverage from the Impala policy. Under the Torrent policy, Carter's relegation to Category B for the ownership of a second vehicle is inapplicable because Carter is included on the title of the Torrent and it is the only vehicle he owns. Category A's inclusion of additionally listed insured provides coverage for "individuals listed in the Declarations as an 'additional listed insured' who do not own a motor vehicle, and whose spouse does not own a motor vehicle." Though this definition and ownership of the Torrent prevented Carter from qualifying for coverage under the Impala policy, Carter's listing as an Additional Listed Insured on the Declarations Page and the absence of another owned vehicle qualifies Carter as a Category A insured under the Torrent policy. Thus, Carter would qualify for $50,000 under the Torrent insurance policy. Appellant's sole point is granted in part.

Pursuant to the terms and conditions of the policies and Section 379.203, the two separate uninsured motorist policies shall apply, providing $25,000 in coverage as a Category B insured under the Impala policy and $50,000 in coverage as a Category A insured under the Torrent policy for a total amount of $75,000. Thus, the trial court erred in awarding $50,000 under each policy.

## III. Conclusion

We reverse the trial court's judgment and remand with instructions to award Carter $50,000 in coverage under the Torrent policy and $25,000 in coverage under

the Impala policy for a total amount of $75,000.

Sherri B. Sullivan, P.J., concurs.

Colleen Dolan, J., concurs.