In the Missouri Court of Appeals
 Eastern District
 DIVISION THREE

JAMES PURK, )
 )
 Plaintiff, ) No. ED109191
 )
and )
 )
LORETTA PURK, )
 ) Appeal from the Circuit Court
 Plaintiff/Respondent, ) of the City of St. Louis
 ) Case No. 1822-CC11565
vs. )
 )
FARMERS INSURANCE )
COMPANY, INC., ) Honorable Joan L. Moriarty
 )
 Defendant/Appellant, )
 )
and ) Filed: May 25, 2021
 )
CHRISTOPHER WILSON, )
 )
 Defendant. )

 The defendant, Farmers Insurance Company, Inc. (“Farmers”), appeals the grant of

partial summary judgment entered by the Circuit Court of the City of St. Louis in favor of the

plaintiff, Loretta Purk, in this lawsuit seeking damages for personal injuries sustained by Mrs.
Purk and her husband, James Purk, in a motor vehicle accident with an uninsured driver.1 At

issue in this appeal is the maximum amount of uninsured motorist coverage available to Mrs.

Purk under three Farmers’ automobile insurance policies, each of which sets forth coverage

limits of $100,000 per person on the declaration page.

 We reverse the trial court’s determination that the policies are ambiguous, and that as a

result, Mrs. Purk is entitled to up to $300,000 in uninsured motorist coverage. We conclude there

is no ambiguity between the owned-vehicle exclusion and other provisions in the insurance

policies. The Farmers policies provide a combined—or stacked—total of $150,000 in uninsured

motorist coverage for Mrs. Purk. There is no dispute that Mrs. Purk is entitled to the policy limits

of $100,000 under the policy on the GMC involved in the accident. We find Mrs. Purk is also

entitled to stack an additional $50,000 in uninsured motorist coverage as a result of the owned-

vehicle exclusion contained in each of the other two policies. The exclusion provides Mrs. Purk

$25,000 in coverage from each of the other two policies, which represents the minimum

coverage required under the Missouri Motor Vehicle Financial Responsibility Law.

 Factual and Procedural Background

 This appeal arises out of a dispute regarding the amount of uninsured motorist (“UM”)

coverage available under three Farmers policies owned by the Purks for injuries they sustained in

an auto accident. On February 21, 2018, Mr. Purk was driving a 2001 GMC Jimmy, and Mrs.

Purk was a passenger. As the Purks’ vehicle entered a northbound turn lane to make a left turn,

Christopher Wilson drove southbound in the turn lane while attempting to pass other traffic.

Wilson collided head-on with the Purks’ vehicle, injuring both Mr. and Mrs. Purk. Wilson and

the vehicle he was driving carried no automobile liability insurance at the time of the accident,

1
 For the reasons explained later in this opinion, Farmers appeals only the grant of partial summary judgment in
favor of Mrs. Purk.

 2
and Wilson has defaulted in this lawsuit. The parties stipulated that Mrs. Purk sustained damages

in the amount of $300,000, and that Mr. Purk sustained damages of at least $150,000.

 At the time of the accident, the Purks were insured under three separate automobile

insurance policies issued by Farmers. The separate insurance policies covered the GMC

(involved in the accident), and two other vehicles, a Dodge Ram, and a Mazda 3 (not involved in

the accident). The declaration page for each policy listed uninsured motorist bodily injury

coverage with limits of $100,000 per person. With few exceptions not at issue here, the policies

are substantially the same, and each policy contains an owned-vehicle exclusion provision.

 In addition to negligence claims against the other driver, Mr. and Mrs. Purk brought suit

against Farmers for breach of contract, vexatious refusal to pay, and breach of good faith and fair

dealing when Farmers refused to pay $300,000 in UM policy limits to each of them for their

bodily injuries. The Purks argued that they had the right to stack the $100,000 per person UM

policy limits in each of the three policies. Farmers disagreed, arguing that while the GMC policy

provides $100,000 in UM coverage, the two additional polices limit UM coverage under the

owned-vehicle exclusion to $25,000 under the Dodge policy, and $25,000 under the Mazda

policy for a total of $150,000 per person. The $25,000 represents the minimum UM coverage

required by the Missouri Motor Vehicle Financial Responsibility Law.

 The Purks dismissed their claims against Farmers for bad faith and vexatious refusal to

pay. With regard to the breach of contract claims, the Purks and Farmers filed competing

motions for partial summary judgment to resolve the dispute over the amount of available UM

coverage under the Dodge and Mazda policies. The trial court granted the Purks’ motion for

partial summary judgment, and denied Farmers’ motion. The trial court stated, “the insurance

policy is ambiguous. The policy includes both provisions expressly excluding the stacking of

 3
multiple uninsured motorist coverages in violation of Missouri law, and allowing for stacking ….

This Court must resolve the ambiguity in favor of coverage.”

 Farmers filed a motion with the trial court asking it to certify its judgment in favor of

Mrs. Purk as final for purposes of appeal in accordance with Rule 74.01(b). Both Mr. and Mrs.

Purk consented to certification, and the trial court granted Farmers’ motion, expressly finding no

just reason for delay. Mrs. Purk then dismissed her remaining negligence claims against the other

driver, thus resolving all claims involving her. Farmers appeals.

 Rule 74.01(b) Certification

 Before addressing the merits of this appeal, we have a duty to determine whether this

Court has jurisdiction. Wilson v. City of St. Louis, 600 S.W.3d 763, 765 (Mo. banc 2020). A

judgment is appealable as a “final judgment” under section 512.020(5) RSMo. (2016) when it

resolves every claim, or at least the last unresolved claim, in a lawsuit.2 Id. at 767-68. Rule

74.01(b) provides an exception to this general rule: the trial court may certify for immediate

appeal a judgment resolving one or more, but fewer than all, of the claims or parties when the

court expressly finds no just reason for delay of the appeal until all claims are resolved. Id. at

768.

 A “final judgment” for purposes of appeal under section 512.020(5) must satisfy the

following criteria. Id. at 771. First, it must actually be a judgment, meaning that it must fully

resolve at least one claim in a lawsuit, and must establish all the rights and liabilities of the

parties with respect to that claim. Id. Second, the judgment must be “final,” either because it

disposes of all claims—or the last claim—in a lawsuit, or because it has been certified for

immediate appeal pursuant to Rule 74.01(b). Id.

2
 All statutory references are to RSMo. (2016) except as otherwise indicated.

 4
 A judgment is eligible for Rule 74.01(b) certification only if it disposes of a “judicial

unit” of claims, meaning it either: (a) disposes of all claims by or against at least one party, or (b)

disposes of one or more claims that are sufficiently distinct from the remaining claims pending in

the trial court. Id. Determining whether these criteria are met is a question of law, and depends

on “the content, substance, and effect of the order” rather than the trial court’s designation. Id.

(quoting Gibson v. Brewer, 952 S.W.2d 239, 244 (Mo. banc 1997)). If, as a matter of law, a

judgment is eligible for Rule 74.01(b) certification, the trial court may certify the judgment for

immediate appeal under Rule 74.01(b), but it is not required to do so. Id. The certification is a

matter of discretion, based on whether the trial court is persuaded and expressly finds no just

reason for delaying appeal until entry of a final judgment disposing of the last claim in the

lawsuit. Id.

 A judgment could be eligible for certification under Rule 74.01(b) because it meets the

definition of a “judicial unit,” but the trial court in its discretion should not make that

certification if resolution of the remaining claims by the trial court could affect, or even moot,

appellate review of the claims already resolved. Id. at 771-72. By the same token, certification of

an otherwise eligible judgment may not meet the “no just reason for delay” test under Rule

74.01(b) if the resolved and unresolved claims are intertwined such that an appellate ruling on

the partial judgment could affect the rights of someone not a party to that judgment (and,

therefore, not a party to the appeal) but who remains a party to the unresolved claims pending in

the trial court. Id. at 772.

 Here, the trial court entered partial summary judgment in favor of Mr. and Mrs. Purk on

their claim for breach of contract against Farmers. Mrs. Purk later dismissed her negligence

claims against the other driver, disposing of all claims involving her. Mr. Purk’s negligence

 5
claims against the other driver remain pending in the trial court, and he is not a party to this

appeal because the trial court certified the judgment for immediate appeal under Rule 74.01(b)

only with regard to Mrs. Purk. Resolution of this appeal will affect Mr. Purk’s rights in the trial

court, setting the maximum amount that he might recover under the UM coverage contained in

the three Farmers’ policies at issue. Nevertheless, Mr. Purk has consented to Rule 74.01(b)

certification for immediate appeal of the summary judgment in favor of Mrs. Purk so that the

question of maximum UM coverage can be resolved before proceeding with his remaining

claims in the trial court. We agree with Farmers and the Purks that principles of judicial

economy call for the immediate resolution of the question on appeal.

 We have jurisdiction to hear Farmers’ appeal of the summary judgment entered in favor

of Mrs. Purk regarding her breach of contract claim against Farmers. In addition, under the

specific circumstances present here, we determine that the trial court did not abuse its discretion

in certifying its judgment in accordance with Rule 74.01(b).

 Standard of Review

 The trial court may properly enter summary judgment when there are no genuine issues

of material fact, and the moving party is entitled to judgment as a matter of law. Floyd-Tunnell v.

Shelter Mut. Ins. Co., 439 S.W.3d 215, 217 (Mo. banc 2014). Because the propriety of summary

judgment is an issue of law, our review is de novo. Id. Likewise, the interpretation of an

insurance policy and the determination whether coverage and exclusion provisions are

ambiguous are questions of law that we review de novo. Id.

 Analysis

 There is no genuine dispute of material fact. The only issue in this case is whether the

owned-vehicle exclusion limits Farmer’s liability under the Dodge and Mazda policies to

 6
$25,000 per person, per policy. When interpreting an insurance policy, we give the language its

plain meaning. Id. We must consider the entire policy and not just isolated provisions. Id.

Although insurance policies contain both grants of coverage and exclusions, we must reconcile

conflicting clauses in a policy as far as their language reasonably permits. Carter v. Shelter Mut.

Ins. Co., 516 S.W.3d 370, 372 (Mo. App. E.D. 2017).

 When an insurance policy’s language is unambiguous, we must enforce it as written.

Floyd-Tunnell, 439 S.W.3d at 217. On the other hand, if the policy’s language is ambiguous, we

resolve that ambiguity against the insurer. Carter, 516 S.W.3d at 372. We also construe the terms

of an insurance policy by applying the meaning that an ordinary person of average understanding

would attach when purchasing insurance. Id. We will find language ambiguous if it is reasonably

open to different constructions. Id. A court, however, may not create an ambiguity to distort

policy language and enforce a construction it believes is more appropriate. Id.

 The Policy Language

 The declaration page of each of the Purks’ three policies provides a limit of $100,000 per

person for UM coverage for bodily injury. The declaration page also notes several endorsements

to the policy, including MO018 2nd Edition and MO052 1st Edition, which are quoted below.

Under “Other Information,” the declaration page states “[o]nly one premium is charged for

UM/UIM coverage under this policy. This policy does not provide ‘stacked’ UM/UIM coverage,

regardless of the number of vehicles or the number of persons covered by the policy.” 3

 Part II of each policy provides UM coverage for “all sums which an insured person is

legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle

because of bodily injury sustained by the insured person.” As a named insured on each of the

3
 “UIM” refers to underinsured motorist coverage, which is not at issue on appeal.

 7
three policies, Mrs. Purk qualifies as an “insured person” subject to recover for “bodily injury”

caused by an “uninsured motor vehicle,” subject to the terms, conditions, and limitations of the

policies. The policies’ uninsured motorist coverage contains the following limits of liability

provision:

 Limits of Liability4

 The limits of liability shown in the Declarations apply subject to the following:

 1. The limit for “each person” [$100,000] is the maximum for bodily injury
 sustained by any person in any one occurrence. Any claim for loss of
 consortium or injury to the relationship arising from this injury shall be
 included in this limit.

 ***

 3. Subject to the law of the state of the occurrence, we will pay no more than
 these maximums regardless of the number of vehicles insured, insured
 persons, claims, claimants, policies, or vehicles involved in the occurrence.

 The policies also contain a Missouri Endorsement (MO018–2nd Edition) that adds the

following limits of liability provisions to the UM coverage:

 5. We will pay no more than the maximum limits [$100,000] for any person or vehicle
 insured by this policy regardless of the number of:
 a. vehicles or premiums shown in the Declarations;
 b. vehicles insured;
 c. insured persons;
 d. claims or claimants;
 e. policies; or
 f. vehicles involved in the accident or occurrence.

 The limits provided by this policy may not be stacked or combined with the
 liability limits provided by any other policy issued to your (sic) or a family
 member by any of the Farmers Insurance Group of Companies. (Emphasis
 added).

 6. The limits are not increased by insuring additional vehicles, even though a separate
 premium for each vehicle is shown on the Declarations page.

4
 We have inserted the bracketed dollar figures only for ease of reference.

 8
 ***

 This endorsement is part of your policy. It supersedes and controls anything to the
 contrary. It is otherwise subject to all other terms of the policy.

 Finally, each policy contains another Missouri Endorsement that adds the following

exclusion (the owned-vehicle exclusion) to the policies’ UM coverage:

 Endorsement Amending Uninsured Motorist Coverage Exclusion – Missouri (MO052 –
 1st Edition)

 This coverage applies only to the vehicle(s) for which this endorsement is listed on the
 Declarations page.

 It is agreed that Part II – Uninsured Motorist Coverage is amended by addition of the
 following:

 Coverage C – Uninsured Motorist Coverage.

 Exclusions

 Coverage does not apply to bodily injury sustained by a person while occupying any
 vehicle owned by you or a family member for which insurance is not afforded under this
 policy or through being struck by that vehicle. This exclusion applies only after the limits
 of liability required by the Financial Responsibility Law have been satisfied. (Emphasis
 added).

 This endorsement is part of your policy. It supersedes and controls anything to the
 contrary. It is otherwise subject to all other terms of the policy.

 Discussion

 The parties agree that there are three policies; that the declaration page of each policy

states $100,000 UM coverage; and that Mrs. Purk is entitled to $100,000 in UM coverage under

the Farmers’ policy on the GMC, the vehicle involved in the accident. The parties also agree that

the declaration page on the policies for the Dodge and Mazda states $100,000 UM coverage, and

that each policy contains an owned-vehicle exclusion. Further, the parties agree that Mrs. Purk is

entitled to stack an additional amount of UM coverage under the Farmers’ policies on the Dodge

and the Mazda.

 9
 The dispute arises over the maximum amount of UM coverage to which Mrs. Purk is

entitled under the Dodge and Mazda insurance policies. Mrs. Purk contends that she is entitled to

stack $100,000 of UM coverage under each of the three policies, for a total of $300,000.

Farmers, on the other hand, contends that the owned-vehicle exclusion contained in the Dodge

and Mazda policies limits the UM coverage to $25,000 per person under each policy, this

amount being the minimum required by Missouri’s Motor Vehicle Financial Responsibility Law.

Therefore, Farmers argues, stacked UM coverage is limited to a maximum total of $150,000 per

person.

 On appeal, Farmers claims the trial court erred in granting Mrs. Purk’s partial motion for

summary judgment, and in concluding that a total of $300,000 in uninsured motorist coverage

was available to her under the three Farmers’ policies. Farmers argues that the owned-vehicle

exclusion in question is not inherently ambiguous, does not violate public policy or Missouri

law, does not conflict with other policy language, and can be reconciled and harmonized with the

policies’ anti-stacking language.

 Mrs. Purk counters that the owned-vehicle exclusion that permits limited stacking, when

read in conjunction with other policy provisions prohibiting any stacking of coverage, creates an

ambiguity. She argues the “Farmers’ policies are internally inconsistent because they emit both

anti-stacking and pro-stacking signals to policyholders. They are not clear and coherent, as they

should be, but are twisted in a knot of contradiction.” In other words, the owned-vehicle

exclusion (MO052 – 1st Edition) which permits stacking of the Dodge and Mazda policies up to

the Missouri mandatory minimum of $25,000 per policy contradict the clear anti-stacking policy

provisions. The anti-stacking provisions, in turn, violate Missouri law. Therefore, Mrs. Purk

argues, we should disregard both the “anti-stacking” and “pro-stacking” provisions of the three

 10
policies, and construe each policy to provide $100,000 per person in UM coverage. Mrs. Purk

derives her figure of $100,000 per person, per policy in UM coverage from the declaration pages

of the three policies at issue. Further, Mrs. Purk argues not only are the policies ambiguous, but

we should construe the policies to grant $300,000 per person in stacked UM coverage to penalize

Farmers for purporting to prohibit stacking in its policies in violation of Missouri law and public

policy.

 Under Missouri law, an automobile liability insurance policy must provide UM coverage.

Section 379.203.1; Copling v. Am. Fam. Mut. Ins. Co., S.I., 612 S.W.3d 226, 230 (Mo. App. S.D.

2020). Every automobile liability insurance policy must include coverage “for the protection of

persons insured thereunder who are legally entitled to recover damages from owners or operators

of uninsured motor vehicles because of bodily injury, sickness or disease, including death,

resulting therefrom.” Section 379.203.1. The purpose of UM coverage is to take the place of the

liability coverage the insured would have received had they been injured in an accident with an

insured motorist. Floyd-Tunnell, 439 S.W.3d at 220. Our Supreme Court has rejected the

attempts of insurers to completely bar an insured from receiving UM coverage, finding such an

exclusion contrary to the public policy of section 379.203 and thus invalid. Shepherd v. Am.

States Ins. Co., 671 S.W.2d 777, 780 (Mo. banc 1984); Johnson v. State Farm Mut. Auto. Ins.

Co., 604 S.W.3d 875, 882 (Mo. App. S.D. 2020). The minimum amount of required UM

coverage, as applicable here, is $25,000 per person. Section 303.030.5 (Supp. 2019); Copling,

612 S.W.3d at 230.

 Throughout the policies, Farmers expressly provides that no stacking of uninsured

motorist coverage is allowed. Specifically, the policies prohibit stacking under “other

information” on the declaration page; the limits of liability provisions for Part II, UM coverage;

 11
and Missouri Endorsement MO018—2nd Edition. “Stacking” refers to an insured’s ability to

obtain multiple benefits for an injury, either from more than one policy, such as when

the policyholder insures separate vehicles under separate policies, or from multiple coverages

provided within a single policy, such as when a policyholder insures multiple vehicles on one

policy. Williams v. Silvola, 234 S.W.3d 396, 398 n.4 (Mo. App. W.D. 2007). Mrs. Purk is correct

that public policy flowing from the statutory requirement for UM coverage in insurance policies

allows insureds to stack UM coverage. Shepherd, 671 S.W.2d at 780; Cameron Mutual

Insurance Co. v. Madden, 533 S.W.2d 538, 544-45 (Mo. banc 1976). Under Missouri law an

insured must be permitted to stack multiple uninsured motorist coverages, and insurers are

prevented from including policy language to prohibit stacking. Williams, 234 S.W.3d at 399. The

trial court found that the Farmers’ policies are ambiguous because they include provisions both

expressly excluding stacking of multiple UM coverages in violation of Missouri law, while also

allowing for stacking as provided in the owned-vehicle exclusion.

 “Missouri law is well-settled that where one provision of a policy appears to grant

coverage and another to take it away, an ambiguity exists that will be resolved in favor of

coverage.” Jones v. Mid-Century Ins. Co., 287 S.W.3d 687, 689 (Mo. banc 2009). This, however,

is not our case. The mere presence of an exclusion does not render an insurance policy

ambiguous. We consider the entire policy, and not just isolated provisions. Floyd-Tunnell, 439

S.W.3d at 217.

 Here, the Farmers’ policies generally purport to deny stacking of UM coverages, which

would indeed violate Missouri law and public policy, and thus, those “no stacking” provisions

are invalid and unenforceable. However, the owned-vehicle exclusion in the policies is clear and

unambiguous. The exclusion specifically permits coverage up to the minimum amount—$25,000

 12
per person, per policy—as required by the state’s Financial Responsibility Law. The owned-

vehicle exclusion limiting stacking also provides that “[t]his endorsement is part of your policy.

It supersedes and controls anything to the contrary.” We reconcile conflicting clauses in a policy

as far as their language reasonably permits, Carter, 516 S.W.3d at 372, and the language of the

owned-vehicle exclusion is not inherently ambiguous. We find instructive other cases that have

found similar owned-vehicle exclusions enforceable. Floyd-Tunnell, 439 S.W.3d at 221;

Copling, 612 S.W.3d at 231; Johnson, 604 S.W.3d at 882. We are able to harmonize the policy

provisions and give effect to the language of the owned-vehicle exclusion as written and in a

manner that provides stacked UM coverage to Mrs. Purk. Therefore, we find that the owned-

vehicle exclusion is enforceable when considered within the context of the policy. Further, the

Farmers’ policies on the two vehicles owned by the Purks, but not involved in the accident,

permit combined coverage to provide up to $25,000 UM benefits per person, per policy

consistent with the exclusion allowing insureds to stack UM coverage. See, e.g., Floyd-Tunnell,

439 S.W.3d at 221 (finding exclusion “clearly and unambiguously” informed policyholders that

coverage limited to $25,000 if insured injured while occupying vehicle owned by insured but not

covered by policy); Johnson, 604 S.W.3d at 881 (finding exclusions in two additional policies

clear and unambiguous when read with policy as a whole).

 Nevertheless, Mrs. Purk argues the inclusion of both “anti-stacking” and “pro-stacking”

language in the policies creates an ambiguity that we must construe against Farmers, the drafter

of the policies, to grant her $300,000 in total UM coverage among the three policies. We must

reject Mrs. Purk’s argument, and we do so under established Missouri precedent, which we must

follow. As we have stated above, we do not find all of the policy language related to stacking

 13
unenforceable. Rather, we are able to reasonably harmonize the owned-vehicle exclusion

allowing limited stacking so that it prevails over the provisions that purport to prohibit stacking.

 First, Mrs. Purk derives her figure of $100,000 per person, per policy in UM coverage

from the declaration pages of the three policies at issue. The declaration pages of the policies,

however, do not grant any coverage. Floyd-Tunnell, 439 S.W.3d at 221. Rather, a policy’s

declaration page is “introductory and merely summarizes the essential terms of the policy.” Id. at

221 n.9. When reviewing the policy as a whole, it becomes clear that a reader must look

elsewhere to determine the scope of coverage. Id. at 221. In this case, the declaration pages

contain a section titled “Policy and Endorsements,” which states “[t]his section lists the policy

form number and any applicable endorsements that make up your insurance contract.” The

section identifies numerous endorsements, including MO052—1st Edition, the Endorsement

Amending Uninsured Motorist Coverage Exclusion – Missouri, which is the owned-vehicle

exclusion at issue. As emphasized by the Floyd-Tunnell Court, a declaration page alone does not

grant coverage, and should not be read in isolation. Id. “Definitions, exclusions, conditions and

endorsements are necessary provisions in insurance policies.” Id. As long as the amendments and

endorsements are clear and unambiguous within the context of the policy as a whole, they are

enforceable. Id.

 The owned-vehicle exclusion in the Farmers’ policies specifically provides that “[t]his

exclusion applies only after the limits of liability required by the Financial Responsibility Law

have been satisfied.” Under section 303.030.5 (Supp. 2019), that required coverage is not less

than $25,000 per person under each of the two policies insuring the Purks’ vehicles that were not

involved in the accident. Thus, under the owned-vehicle exclusion, policyholders are clearly and

unambiguously informed that the exclusion applies only after the limits of liability required by

 14
the Financial Responsibility Law have been satisfied. Policyholders are informed that coverage

will be provided up to the statutory minimum, here $25,000 per person, if the insured is injured

while occupying a vehicle he or she owns but that is not covered by the same policy covering the

vehicle involved in the accident.

 Second, our Courts have repeatedly upheld owned-vehicle exclusion language similar to

that at issue here, and have determined that policyholders are entitled to the minimum amount of

UM coverage required by statute. In Floyd-Tunnell, our Supreme Court found no ambiguity in an

insurance policy, despite an exclusion that reduced the UM coverage below the limits on the

declaration page when an insured was injured in an owned vehicle not covered by the policy. Id.

at 220-21. As we find in the present case, the Supreme Court found the “plain language” of the

owned-vehicle exclusion limited the insurer’s liability to $25,000 when it referred to the

minimum amount “required by the uninsured motorist insurance law and financial responsibility

law of the state of Missouri[.]”5 Id. at 218, 221. Further, the Court concluded that “under the

heading ‘Exclusions from Coverage E,’ policyholders are clearly and unambiguously informed

that coverage will be limited to $25,000 if the insured was injured while occupying a vehicle

owned by the insured but not covered by the policy.” Id. at 221. We are compelled to follow the

precedent set forth by our Supreme Court in the Floyd-Tunnell case. Johnson, 604 S.W.3d at

881.

 In Johnson v. State Farm Mutual Automobile Insurance Company, the Court rejected the

insured’s argument that his policies’ owned-vehicle exclusion reduced the amount of UM

5
 Notably, the Supreme Court found the exclusion to be clear and unambiguous even though the language of the
exclusion itself did not specify a dollar amount, instead referring to the minimum amount “required by the uninsured
motorist insurance law and financial responsibility law of the state of Missouri[.]” Floyd-Tunnell, 439 S.W.3d at
218, 221. Following Floyd-Tunnell, the Southern District has also rejected an insured’s argument that the reference
in his policy’s owned-vehicle exclusion to “the uninsured motor vehicle coverage limits required by the Missouri
Financial Responsibility Law” was an “undefined technical phrase” rendering the policy ambiguous. Johnson, 604
S.W.3d at 881.

 15
coverage available, and so was void as against public policy and Missouri law. Id. at 882. The

Court explained that State Farm did not attempt to completely bar the insured from UM coverage

contained in his two additional policies. Id. Rather, State Farm provided the insured with the full

amount of UM coverage under the policy of the vehicle involved in the accident, and also

provided him, under his two other policies, with the minimum amount of coverage required by

Missouri law. Id.

 Moreoever, in Copling v. American Family Mutual Insurance Company, the insured had

several policies containing an owned-vehicle exclusion in its UM coverage worded similarly to

the exclusion at issue here. 612 S.W.3d at 228-29. The insured argued that because of ambiguity

in the owned-vehicle exclusion, she was entitled to the $100,000 per person limits of UM

coverage set forth on the declaration page of each policy. Id. at 229. The insurer countered that

the policy provisions plainly and unambiguously provided for stacked coverage only up to the

minimum financial responsibility limits under Missouri law. Id. The Southern District

determined that the owned-vehicle exclusion and the minimum-financial-responsibility clause,

when read together with all other applicable coverage provisions, excluded UM coverage beyond

the $25,000 minimum required by Missouri’s financial responsibility law when the insured owns

and occupies a vehicle not insured for coverage under the policy at issue. Id. at 231.

 Farmers relies on Blumer v. Automobile Club Inter-Insurance Exchange wherein the

Court limited an owned-vehicle exclusion to amounts in excess of that required by the Motor

Vehicle Financial Responsibility Law. 340 S.W.3d 214, 220 (Mo. App. W.D. 2011). The factual

situation in Blumer is distinguishable from the present case. Unlike here, the owned-vehicle

exclusion at issue in Blumer denied any UM coverage to an insured who was injured in an

owned vehicle not covered under the policy in violation of the Motor Vehicle Financial

 16
Responsibility Law. Id. at 218-19. The Western District found the exclusion invalid and against

public policy. Id. at 220. The Court determined that the insured was entitled to recover, as here,

the statutory minimum of $25,000 UM coverage per vehicle insured under his Automobile Club

policy, and that he could stack the coverage as well. Id. In so concluding, the Court rejected, as

we must, the insured’s argument that he was entitled to the uninsured motorist limits of liability

under the policy of $100,000 per person, per vehicle. Id. at 218, 220.

 We are bound to enforce unambiguous policy language as written. Floyd-Tunnell, 439

S.W.3d at 217; Johnson, 604 S.W.3d at 880. In addition, we must reconcile conflicting clauses in

a policy to the extent their language reasonably permits, Carter, 516 S.W.3d at 372; Williams,

234 S.W.3d at 403. None of the cases cited above support Mrs. Purk’s proposition that an

insurance policy’s owned-vehicle exclusion is ambiguous or against public policy, entitling an

insured to rely on the declaration page to determine the amount of UM coverage. Nor does Mrs.

Purk cite to any case where the court has done so. Rather, the Courts have concluded that the

insured should receive the statutory minimum UM coverage required by the Missouri Motor

Vehicle Financial Responsibility Law on each vehicle owned by the insured, but not involved in

the accident. We reach the same conclusion. We may not create an ambiguity to distort policy

language and enforce a construction we believe is more appropriate. Carter, 516 S.W.3d at 372.

 Finally, Mrs. Purk urges us to construe the policies to grant $300,000 per person in

stacked UM coverage in order to penalize Farmers for purporting to prohibit stacking in its

policies in violation of Missouri law and public policy. We decline to do so. The legislature and

the Missouri Department of Insurance are better equipped to address this issue.

 Conclusion

 We reverse the trial court’s judgment, and remand with instructions to award Mrs. Purk

 17
$100,000 in UM coverage under the GMC policy, $25,000 in coverage under the Dodge policy,

and $25,000 under the Mazda policy for a total of $150,000 in UM coverage under the three

policies.

 ________________________________________
 Angela T. Quigless, P.J.

Kurt S. Odenwald, J. and
James M. Dowd, J., concur.

 18