

# SUPREME COURT OF MISSOURI
# en banc

REBECCA FLOYD-TUNNELL, ET AL.,     )
    )
        Appellants,     )
    )
v.     )     No. SC93904
    )
SHELTER MUTUAL INSURANCE COMPANY,     )
    )
        Respondent.     )
    )

### APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY
The Honorable W. Brent Powell, Judge

*Opinion issued July 29, 2014*

The widow of a man killed in an automobile accident sued the automobile liability insurance carrier seeking uninsured motorist ("UM") coverage for her husband's wrongful death. The trial court held that the insurer's liability was limited by an "owned-vehicle" partial exclusion in the couple's policies, which limited coverage when an insured was injured while occupying a vehicle owned by the insured but not covered by the policy. The widow appealed, arguing that she was entitled to coverage for the damages she sustained as a result of her husband's death and that the partial exclusion did not apply to her because she was not in the car when the accident occurred. Alternatively, she argues the partial exclusion is ambiguous because it limits coverage granted elsewhere in the policies.

1

This Court affirms. Although the widow is an insured, she is not entitled to UM coverage because she did not sustain bodily injuries. The insurer provided coverage for the decedent's wrongful death, and the partial exclusion unambiguously limits this coverage.

## I. Factual and Procedural Background

Doris Floyd's husband, Jerry, was killed in an automobile accident with an uninsured motorist.[1] At the time of the accident, Jerry and Doris were the named insureds on three automobile liability insurance policies issued by Shelter Mutual Insurance Company for three vehicles they owned. One policy covered the car Jerry was driving when the accident occurred, and the other two policies covered other cars owned by the Floyds. Each policy's declarations page provided that UM coverage was limited to $100,000 per person, but the policies also included an "owned-vehicle" partial exclusion that further limited coverage if the insured was injured while occupying a vehicle owned by the insured but not covered by the policy. The partial exclusion limited coverage to $25,000, the minimum amount required by Missouri's UM statute, section 379.203.[2]

Doris sued Shelter seeking $100,000 of UM coverage under each policy for a total of $300,000.[3] Shelter paid $150,000: $100,000 under the policy on the vehicle Jerry was driving when the accident occurred, and $25,000 under each of the other two policies.

---

[1] Because these individuals share a common surname, they will be referred to by their first names. No disrespect is intended.
[2] All statutory references are to RSMo 2000 unless otherwise indicated.
[3] Rebecca Floyd-Tunnell, Jerry's daughter, is also a party in this case.

The parties agreed that Shelter had paid the full amount of UM coverage available under the first policy, but Doris argued that Shelter owed $75,000 under each of the other two policies.

Both parties moved for summary judgment. Doris claimed that she was entitled to UM coverage for the damages she sustained from her husband's wrongful death, and the partial exclusion did not apply to her because she was not in the car when the accident occurred. In the alternative, Doris argued that the partial exclusion rendered the policies ambiguous because it limited coverage granted elsewhere in each policy. Shelter argued that the partial exclusion applied to Doris's claim and unambiguously limited its liability to $25,000 under each policy. The trial court ruled that the partial exclusion applied and was unambiguous and granted Shelter's motion for summary judgment. Doris appeals.[4]

## II. Standard of Review

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 380 (Mo. banc 1993). Because the propriety of summary judgment is an issue of law, this Court's review is *de novo*. *Id.* at 376. The interpretation of an insurance policy and the determination whether coverage and exclusion provisions are ambiguous are also questions of law that this Court reviews *de novo*. *Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. banc 2010).

---

[4] This Court granted transfer after opinion by the court of appeals. Mo. Const. art. V, § 10.

## III. Analysis

The issue in this case is whether the partial exclusion limits Shelter's liability under two of the policies to $25,000 per policy. The general rule in interpreting an insurance policy is to give the language its plain meaning. *Allen v. Cont'l W. Ins. Co.*, --- S.W.3d ---, No. SC93502, 2014 WL 2191034, at *4 (Mo. banc May 27, 2014). The entire policy and not just isolated provisions must be considered. *Id.* If the policy's language is unambiguous, it must be enforced as written. *Rodriguez v. Gen. Acc. Ins. Co. of Am.*, 808 S.W.2d 379, 382 (Mo. banc 1991).

### A. The Policy Language

The UM coverage provisions in the Floyds' policies are identical and provide, in relevant part:

> PART IV—COVERAGE E—UNINSURED MOTOR VEHICLE
> LIABILITY COVERAGE
> The following coverage is provided under this policy only if it is shown in the Declarations and is subject to all conditions, exclusions, and limitations of our liability, stated in this policy.
>
> INSURING AGREEMENT FOR COVERAGE E
> If the owner or operator of an uninsured motor vehicle is legally obligated to pay damages, we will pay the uncompensated damages; but this agreement is subject to all conditions, exclusions, and limitations of our liability, stated in this policy.
>
> DEFINITIONS
> (4) Bodily injury means:
> (a) A physical injury;
> (b) A sickness or disease of the body;
> (c) The physical pain and physical suffering that directly results from (a) or (b), above; or

4

(d) A death that directly results from (a) or (b), above.[5]

ADDITIONAL DEFINITIONS USED IN COVERAGE E
In Coverage E:
(1) Damages means money owed to an insured for bodily injuries, sickness, or disease, sustained by that insured and caused, in whole or in part, by the ownership or use of an uninsured motor vehicle.

LIMITS OF OUR LIABILITY UNDER COVERAGE E
The limits of our liability under Coverage E are stated in the Declarations and are subject to the following limitations:
. . .
(2)The limit shown in the Declarations for "each person" is the limit of our liability for all uncompensated damages of one insured. This limit applies to all claims made by others resulting from that insured's bodily injury, whether direct or derivative in nature.

PARTIAL EXCLUSION FROM COVERAGE E
In claims involving the situations listed below, our limit of liability under Coverage E is the minimum dollar amount required by the uninsured motorist insurance law and financial responsibility law of the state of Missouri:
. . .
(3) If any part of the damages are sustained while the insured is occupying a motor vehicle owned by any insured, the spouse of any insured, or a resident of any insured's household; unless it is the described auto.

## B. Discussion

The policies' insuring agreement for UM coverage states that Shelter will provide coverage if an uninsured motorist is legally obligated to pay "damages." The term "damages" is defined as "money owed to an insured for bodily injuries, sickness or disease, sustained by that insured" and caused by an uninsured motorist. The policies define "bodily injury" to include physical injury or a death that directly results from a

---

[5] The definition of "bodily injury" is not set forth in Part IV of the policies but in the policies' preliminary "Definitions" section, which applies to all parts of each policy.

physical injury.  Applying these definitions to the insuring agreement, the policies' plain language provides UM coverage for money owed to an insured for bodily injury or death sustained by the insured and caused by an uninsured motorist.

The amount of UM coverage is subject to the limitations and exclusions stated in the policies.  Each policy limits Shelter's liability for UM coverage to $100,000 per person, but the policies contain an "owned-vehicle" partial exclusion that further limits Shelter's liability to $25,000.  The "owned-vehicle" partial exclusion applies when any part of the "damages" (i.e., the money owed to an insured for bodily injury sustained by that insured) are sustained while the insured is occupying a vehicle owned by the insured but not covered by the policy.

Doris' first argument raises the question of whether the term "the insured" in these provisions refers to Jerry or Doris.  Shelter acknowledged that the policies covered Jerry for his wrongful death, but there was limited coverage under two of the policies because the accident occurred while Jerry was occupying a car he owned, but it was not the vehicle covered by those policies.  Doris concedes that, if "the insured" refers to Jerry, the partial exclusion limits coverage under the other two policies.  She claims, however, that she is entitled to UM coverage and that Shelter is liable for the policies' full UM coverage limits because the partial exclusion does not apply to her.  Doris notes that damages for wrongful death do not belong to the decedent or the decedent's estate but rather to the class of persons authorized by section 537.080 to bring the wrongful death claim.  *Lawrence v. Beverly Manor*, 273 S.W.3d 525, 527 (Mo. banc 2009).  As Jerry's widow, Doris sustained damages as result of his wrongful death.  Doris contends that the

6

policies provide coverage to her for these damages, and because she was not in the car when the accident occurred, the partial exclusion does not limit this coverage.

This Court starts with the language of the policies to determine who qualifies as an insured and whether that person is entitled to coverage. *See Steele v. Shelter Mut. Ins. Co.*, 400 S.W.3d 295, 297 (Mo. banc 2013). It is undisputed that both Jerry and Doris qualified as insureds because they are named as insureds on each policy's declarations page. The UM coverage provisions also include a severability clause, which provides that the UM coverage applies separately to each insured. This type of clause has been construed to mean that, when applying the coverage to any particular insured, the term "the insured" is deemed to refer only to the insured who is claiming coverage under the policy. *Baker v. DePew*, 860 S.W.2d 318, 320 (Mo. banc 1993). "One simple method of visibly demonstrating the impact of the severability clause is to insert the name of the applicable insured immediately following the term 'insured' in the relevant provisions." *Id.* To determine whether Doris is entitled to coverage, her name should be inserted immediately following the term "insured" throughout the policies.

Applying this method to Doris's claim, she would be entitled to coverage for "money owed to an insured [Doris Floyd] for bodily injury . . . sustained by that insured [Doris Floyd]" and caused by an uninsured motorist. But that is not what happened here. Doris is owed money for bodily injuries caused by an uninsured motorist, but she did not

sustain those bodily injuries herself.  The plain language of the policies denies her coverage for the damages she sustained as a result of her husband's death.[6]

This result is not contrary to public policy.  Missouri law requires every automobile liability insurance policy to include coverage "*for the protection of persons insured thereunder* who are legally entitled to recover damages from owners or operators of uninsured motor vehicles *because of bodily injury*, sickness or disease, *including death*, resulting therefrom."  Section 379.203 (emphasis added).  The purpose of UM coverage is to take the place of the liability coverage the insured would have received had he or she been involved in an accident with an insured motorist.  *Kuda v. Am. Family Mut. Ins. Co.*, 790 S.W.2d 464, 467 (Mo. banc 1990).  When an insured is killed by an uninsured motorist, UM coverage "provide[s] indemnity for damages resulting from an insured's wrongful death caused by an uninsured motorist, payable to whatever person or persons may be entitled to bring an action under [section] 537.080, whether spouse, child or children, parent or parents, or administrator or executor."  *Cobb v. State Sec. Ins. Co.*, 576 S.W.2d 726, 736 (Mo. banc 1979).  That is precisely what happened here.  Shelter

---

[6] The dissent argues that this interpretation renders the policies inapplicable to wrongful death claims because, under Missouri law, the person entitled to recover damages will never be the person who suffered bodily injury.  Read as a whole, the policies provide UM coverage for the wrongful death of the insured even when applicable law makes the survivors—rather than the decedent's estate—the persons entitled to recover damages.  This is evidenced by the definition of "bodily injury," which includes the insured's death, as well as the UM coverage payment provisions, which provide that Shelter "will pay any amount due under Coverage E [UM coverage] to . . . [a]ny person legally authorized to maintain and settle a claim for the insured's death, if our payment is for damages resulting from the insured's death."  In any event, this Court need not consider whether the policies provide coverage to Jerry for his wrongful death because Shelter has already provided coverage.  The only question presented by Doris' first argument is whether the policies provide coverage to her for Jerry's wrongful death, and they plainly do not.

8

provided coverage for the wrongful death of its insured, Jerry, and it paid those benefits to the persons authorized by section 537.080.1 to bring a wrongful death claim.[7]

In contrast, the UM coverage mandated by section 379.203 does not include coverage for damages sustained by an insured as a result of the wrongful death *of another person*. It would be unreasonable to interpret section 379.203 to require every automobile liability insurance policy to provide coverage for damages its insureds are legally entitled to recover for the wrongful death of another person. This interpretation would expand the scope of mandatory UM coverage far beyond the purpose of the statute. It is not meant to provide coverage for injuries associated with persons and vehicles not insured under the policy.

In cases in which the decedent and his or her statutory beneficiary are both insureds, "the legislature contemplated that the survivors of a person killed in an accident with an uninsured motorist would pursue a claim under the *decedent's* uninsured motorist coverage, rather than the survivor's policy." *Livingston v. Omaha Prop. & Cas. Ins. Co.*, 927 S.W.2d 444, 446 (Mo. App. 1996); *see also Stewart v. Royal*, 343 S.W.3d 736, 743-44 (Mo. App. 2011); *Lavender v. State Auto. Mut. Ins. Co.*, 933 S.W.2d 888, 892 (Mo. App. 1996). Here, Shelter provided coverage for Jerry's death; the only issue is the amount of coverage due. The plain language of the partial exclusion limits Shelter's

---

[7] Shelter provided the UM coverage due under the policies to Doris and Rebecca Floyd-Tunnell. This is consistent with section 537.080.1, which provides that the decedent's spouse and children are among the class of persons with first priority to bring a wrongful death claim. It is also consistent with the policies' UM coverage payment provisions, quoted *supra* note 6, which provide that Shelter will pay UM coverage benefits to the persons entitled to bring an action for the insured's wrongful death.

liability to $25,000 when the damages are sustained while the insured is occupying a vehicle that is owned by the insured but is not the vehicle covered by the policy. Because Jerry died while driving a vehicle he owned, coverage under the other two policies is limited by the partial exclusion.

Doris next argues that the partial exclusion renders the policies ambiguous because it reduces coverage below the limits set forth on the declarations pages.[8] The mere presence of an exclusion does not render an insurance policy ambiguous, however.

> Insurance policies customarily include definitions that limit words used in granting coverage as well as exclusions that exclude from coverage otherwise covered risks. While a broad grant of coverage in one provision that is taken away by a more limited grant in another may be contradictory and inconsistent, the use of definitions and exclusions is not necessarily contradictory or inconsistent. . . . Definitions, exclusions, conditions and endorsements are necessary provisions in insurance policies. If they are clear and unambiguous within the context of the policy as a whole, they are enforceable.

*Todd v. Missouri United Sch. Ins. Council*, 223 S.W.3d 156, 162-63 (Mo. banc 2007).

When the policies at issue are read as a whole, the partial exclusion is clear and unambiguous. At the outset, the policies' declarations pages do not grant any coverage. The declarations state the policy's essential terms in an abbreviated form, and when the policy is read as a whole, it is clear that a reader must look elsewhere to determine the

---

[8] Doris cites *Rice v. Shelter Mutual Insurance Co.*, 301 S.W.3d 43 (Mo. banc 2009), in which this Court held that an insurance policy was ambiguous because "it grants coverage in one provision and limits it in another." *Id.* at 49. Doris' reliance on *Rice* is erroneous. The policy in *Rice* included a partial exclusion limiting UM coverage to the statutory minimum and another provision making any UM coverage exceeding the statutory minimum fully enforceable. This Court found these two provisions inconsistent and resolved the inconsistency in favor of the insured. In the present case, however, nothing in the policies indicates that UM coverage exceeding the statutory minimum is enforceable *notwithstanding* the partial exclusion.

10

scope of coverage. *See id.* at 160; *Peters v. Farmers Ins. Co., Inc.*, 726 S.W.2d 749, 751 (Mo. banc 1987) ("[t]he 'declarations' are introductory only and subject to refinement and definition in the body of the policy").[9]  Part IV of each policy sets forth Coverage E, the UM coverage, immediately alerting policyholders that: "[t]he following coverage is provided under the policy only if it is shown in the Declarations *and is subject to all conditions and exclusions, and limitations of our liability stated in this policy*" (emphasis added).  The existence of limitations and exclusions is reiterated in the insuring agreement, which again provides that UM coverage is "subject to all conditions, exclusions, and limitations of our liability, stated in this policy."  Later in Part IV, under the heading "Exclusions from Coverage E," policyholders are clearly and unambiguously informed that coverage will be limited to $25,000 if the insured was injured while occupying a vehicle owned by the insured but not covered by the policy,

### IV.  Conclusion

The judgment is affirmed.

_____
Mary R. Russell, Chief Justice

Breckenridge, Fischer, Stith, and
Wilson, JJ., concur; Teitelman, J.,
dissents in separate opinion filed;
Draper, J., concurs in opinion of Teitelman, J.

---

[9] Doris points out that the declarations pages also set forth one of the policies' partial exclusions, which applies to persons who become insureds because they have permission or general consent to use the vehicle covered by the policy.  The presence of one exclusion does not transform the declarations into a promise of coverage or create an expectation that it is the *only* exclusion—again, the declarations are introductory and merely summarize the essential terms of the policy.

11



# SUPREME COURT OF MISSOURI
# en banc

REBECCA FLOYD-TUNNELL, ET AL.,     )
    )
        Appellants,     )
    )
v.     )     No. SC93904
    )
SHELTER MUTUAL INSURANCE COMPANY,     )
    )
        Respondent.     )
    )

## DISSENTING OPINION

I respectfully dissent. The principal opinion holds that Mrs. Floyd is not entitled to UM coverage because she did not sustain any bodily injuries and, further, that the partial exclusion unambiguously limits coverage for two of the policies to the statutory minimum. This holding is incorrect because Mrs. Floyd is the "insured" and, as such, the partial exclusion is inapplicable to her.

The extent of Mrs. Floyd's insurance coverage is a matter of contract. Consequently, as with any contract, this Court must enforce the Shelter policies according to their terms. *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 131 (Mo. banc 2007). "In construing the terms of an insurance policy, this Court applies the meaning that would be attached by an ordinary person of average understanding if purchasing

insurance and resolves ambiguities in favor of the insured." *Rice v. Shelter Mut. Ins. Co.*, 301 S.W.3d 43, 46 (Mo. banc 2009). Moreover, when an exclusionary clause is at issue, the analysis begins with what amounts to a presumption of coverage. This presumption is embedded in the principle that exclusionary clauses are construed strictly against the drafter, who also bears the burden of demonstrating the exclusion applies. *Manner v. Schiermeier*, 393 S.W.3d 58, 62 (Mo. banc 2013).

A full understanding of the terms of the Shelter policies requires recognition of the nature of the underlying wrongful death claim. Mrs. Floyd is not seeking insurance coverage for a physical injury inflicted directly on her. This does not mean, however, that Mrs. Floyd was not injured. To the contrary, both law and common experience recognize that Mrs. Floyd was injured grievously by Mr. Floyd's death through the actions of an uninsured motorist. Mrs. Floyd's wrongful death claim is not a derivative claim based on damages Mr. Floyd could have recovered had he survived. It is, instead, Mrs. Floyd's separate and distinct claim allowing her to recover damages for items such as loss of consortium, companionship and economic support. *See Lawrence v. Beverly Manor*, 273 S.W.3d 525, 527 (Mo. banc 2009). Consequently, Mrs. Floyd, both by the nature of her claim and the plain language of the policies' severability clause, is, for all purposes, the relevant "insured."

With this in mind, the analysis turns to the language of the Shelter policies. As the principal opinion notes, the UM coverage presupposes that an "insured" suffered "damages." The policies provide that "damages" means "money owed to an insured for bodily injuries … sustained by that insured and caused, in whole or in part, by … an

2

uninsured motor vehicle." The principal opinion holds that, because Mrs. Floyd did not sustain any "bodily injuries" herself, she is not entitled to coverage for the damages she sustained as a result of Mr. Floyd's death. This interpretation of the policy language overlooks the fact that, in a wrongful death case, the "insured" seeking recovery of damages *never* will be the individual to whom money is "owed … for bodily injuries." The conclusion that Mrs. Floyd is not entitled to coverage for the damages she sustained as a result of Mr. Floyd's death requires an interpretation of the Shelter policies that renders the policies inapplicable to wrongful death claims. This conclusion is erroneous given the plain language of section 379.203.1, RSMo 2000, which provides that no automobile policy issued in Missouri shall be issued unless coverage is provided "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of … death."

After concluding that Mrs. Floyd was not entitled to UM coverage, the principal opinion notes that Shelter provided coverage for Mr. Floyd's wrongful death but properly limited that coverage pursuant to the policies' partial exclusion. The partial exclusion provides that Shelter's limit of liability is $25,000, "if any part of the damages are sustained while the insured is occupying a motor vehicle owned by any insured … unless it is the described auto." The principal opinion concludes that the partial exclusion unambiguously applies because Mr. Floyd died while driving a vehicle he owned that was not the "described auto" covered by the policy.

In this case, the exclusion does not apply because Mr. Floyd is deceased and, as established above, Mrs. Floyd is the relevant insured. Mrs. Floyd never "occupied a

3

motor vehicle" in sustaining wrongful death damages as a result of Mr. Floyd's death. Further, even if Mr. Floyd is considered to be the "insured," the exclusion is still inapplicable because Mr. Floyd – the decedent – suffered no compensable damages because neither he nor his estate is "owed money" for his injuries. As noted, the damages for Mr. Floyd's wrongful death are personal to Mrs. Floyd and other statutory beneficiaries. At best, the partial exclusion is ambiguous and must be construed strictly against Shelter. Mrs. Floyd is entitled to recover the full amount of the policies that she and Mr. Floyd purchased.

For the foregoing reasons, I would reverse the judgment.

_____
Richard B. Teitelman, Judge

4