IN THE MISSOURI COURT OF APPEALS
 WESTERN DISTRICT

 COURTNEY JONES, )
 )
 Respondent, )
 v. ) WD84018
 )
 ) OPINION FILED:
 AMERICAN FAMILY MUTUAL ) August 24, 2021
 INSURANCE COMPANY, S.I., )
 )
 Appellant. )

 Appeal from the Circuit Court of Jackson County, Missouri
 The Honorable James F. Kanatzar, Judge

 Before Division Three: Edward R. Ardini, Jr., Presiding Judge, and
 Mark D. Pfeiffer and W. Douglas Thomson, Judges

 American Family Mutual Insurance Company, S.I. (“American Family”) appeals from the

Circuit Court of Jackson County, Missouri’s (“trial court”) entry of summary judgment in favor of

Ms. Courtney Jones (“Jones”) on her claim for additional uninsured motorist (“UM”) benefits

under two policies insuring two vehicles she was not driving at the time of her accident. We

reverse the trial court’s judgment.
 Factual and Procedural Background1

 The parties jointly stipulated to the following facts. On August 4, 2017, Jones was

traveling on Southwest 3rd Street in Lee’s Summit, Jackson County, Missouri, when a vehicle

approaching from the opposite direction turned left in front of Jones, causing a wreck. At the time

of the wreck, Jones was insured under two automobile insurance policies and one motorcycle

policy issued by American Family: Policy No. 2528-6929-01-08-FPPA-MO insured a 2014

Toyota Sequoia that was owned by Jones (“Sequoia policy”); Policy No. 2528-6929-04-17-FPPA-

MO insured a 1989 Toyota Camry owned by Jones (“Camry policy”); and Policy No. 2528-6929-

02-11-SCYC-MO, under which Jones was insured, insured a 2009 Big Dog Motorcycle (“Cycle

policy”) (all three policies are referred to collectively as “the policies”). The wreck was the direct

and proximate result of the negligence of the other driver, who was an uninsured motorist as that

term was defined in the policies. When the wreck occurred, Jones was driving the 2014 Toyota

Sequoia, which was insured under the Sequoia policy.

 The relevant language in each of the policies is identical (with one non-material exception).

The declarations page of each of the policies provided:

 DECLARATIONS
 ....

 PLEASE READ YOUR POLICY
 ....

 COVERAGES AND LIMITS PROVIDED
 ....

 ADDITIONAL ENDORSEMENTS THAT APPLY TO YOUR POLICY:
 ....

 1
 The factual background is drawn from the parties’ Stipulation of Uncontroverted Material Facts submitted
to the trial court for the purpose of ruling on their cross-motions for summary judgment. See Lamar Co., LLC v. City
of Columbia, 512 S.W.3d 774, 777 n.2 (Mo. App. W.D. 2016).

 2
 UNINSURED MOTORIST – BODILY INJURY ONLY
 $100,000 EACH PERSON $300,000 EACH ACCIDENT

The insuring agreement of each of the policies provided:

 AGREEMENT

 We agree with you, in return for your premium payment, to insure you subject to
 all the terms of this policy. We will insure you for the coverages and the limits of
 liability as shown in the Declarations of this policy.

Number 12 of the GENERAL CONDITIONS of the Sequoia and Camry policies pertained to

“Two Or More Cars Insured By Us.” The Missouri Changes endorsement modified the provision

as follows:

 MISSOURI CHANGES
 ....

 B. Paragraph 12. Two Or More Cars Insured By Us, is deleted and replaced
 with the following:
 12. Two Or More Cars Insured By Us
 If two or more auto insurance policies issued to you or a relative by
 us or any other member company of the American Family
 Insurance Group of companies apply to the same auto accident, the
 total limits of liability under all such policies shall not exceed the
 highest limit of liability under any one policy.

 This provision does not apply to Uninsured Motorist Coverage
 provided to you or a relative.

The Cycle policy was the same except “Cars” and “auto” was replaced with “Cycles” and “cycle”

respectively. The Uninsured Motorist Coverage-Missouri endorsement provided, in pertinent part:

 UNINSURED MOTORIST COVERAGE – MISSOURI
 ....

 C. INSURING AGREEMENT
 1. We will pay compensatory damages for bodily injury which an
 insured person is legally entitled to recover from the owner or
 operator of an uninsured motor vehicle.

 3
The endorsement contained certain exclusions to coverage, including the “owned-vehicle

exclusion”:

 D. EXCLUSIONS
 1. We do not provide coverage for bodily injury sustained by any
 insured person:
 a. while occupying, or when struck by, a motor vehicle that is
 not insured for this coverage under this policy if it is owned
 by you or any resident of your household.

The exclusions section of the endorsement concluded with a paragraph containing a “minimum-

financial-responsibility clause” and an “any-other-insurance clause”:

 If any uninsured motorist insurance law or financial responsibility law
 determines that any exclusion is unenforceable, we will provide only the
 minimum limits required by that law. If any other insurance provides
 coverage up to the minimum limits required, the provisions of this coverage
 remain unchanged.

The limits of liability section of the endorsement provided, in pertinent part:

 E. LIMITS OF LIABILITY
 ....
 5. However, in no event shall the amount we pay to the insured person
 be reduced below the Missouri Motor Vehicle Financial
 Responsibility Law minimum limit.

American Family paid Jones $150,000 in UM benefits: $100,000 under the Sequoia policy and

the $25,000 Missouri Motor Vehicle Financial Responsibility Law (“MVFRL”) minimum limit

under the Camry and Cycle policies.

 Jones filed a lawsuit against American Family seeking an additional $150,000 in UM

benefits, for a total of $300,000 in UM coverage under the three policies. The parties filed a

Stipulation of Uncontroverted Material Facts for the purpose of submitting cross-motions for

summary judgment. The parties stipulated that Jones’s damages from her injuries caused by the

other driver’s negligence were at least $300,000. The parties each filed motions for summary

judgment seeking a determination from the trial court whether Jones was entitled, as a matter of

 4
law, to judgment in the amount of $150,000 for the remaining UM policy limits under the policies

insuring the vehicles she was not driving at the time of the accident, or whether the owned-vehicle

exclusions limited the available stacked coverage to the minimum provided in the MVFRL.2

 In Jones’s summary judgment motion, she argued that the policies issued by American

Family were ambiguous, when read as a whole, because the policies unequivocally and

unconditionally promised $300,000 in UM coverage but then, in a manner that would be confusing

and ambiguous to a lay person, attempted to take away coverage in the exclusions section of an

endorsement to the UM coverage. Jones argued that a lay person would reasonably expect to

receive the total $100,000 in UM benefits under each policy reflected in the Declarations. Jones

claimed that American Family was required to pay an additional $150,000 (consisting of the

remaining $75,000 limits of UM liability under the Camry policy and the Cycle policy).

 In American Family’s competing summary judgment motion, it asserted that $150,000 was

the amount of UM coverage available to Jones under the policies. It argued that the UM coverage

provided by American Family to Jones contained clear and unambiguous owned-vehicle

exclusions that limited the available stacked coverage to the minimum provided in the MVFRL.

 The trial court denied American Family’s motion,3 granted Jones’s motion, and entered

judgment in her favor and against American Family in the amount of $150,000 on July 31, 2020.

 2
 “Stacking” refers to “[a]n insured’s ability to obtain multiple insurance coverage benefits for an injury either
from more than one policy, as where the insured has two or more separate vehicles under separate policies, or from
multiple coverages provided for within a single policy, as when an insured has one policy which covers more than one
vehicle.” Manner v. Schiermeier, 393 S.W.3d 58, 64 (Mo. banc 2013).
 3
 We note that, “[g]enerally, the denial of a motion for summary judgment is not a final judgment that may
be reviewed on appeal.” Taylor v. Owners Ins. Co., 499 S.W.3d 351, 354 (Mo. App. W.D. 2016) (internal quotation
marks omitted). “However, [w]hen the merits of that motion . . . are inextricably intertwined with the issues in an
appealable summary judgment in favor of another party, then that denial may be reviewable.” Id. (internal quotation
marks omitted). Here, the motions for summary judgment relied on the application of the same law to stipulated facts
in order to answer the question whether the UM owned-vehicle exclusion unambiguously limited Jones to recovery
of the statutory financial responsibility minimum under the Camry and Cycle policies. The motions were inextricably
intertwined, and we will review both the grant and denial of summary judgment.

 5
The trial court determined that the owned-vehicle exclusion was unenforceable in all three

insurance policies. The trial court concluded that the policies were:

 ambiguous, when read as a whole, because the policies unequivocally and
 unconditionally promise $300,000 in UM coverage . . . but then, in a manner that
 would be confusing and ambiguous to a lay person attempt to take away coverage
 in the Exclusions section of the Endorsement 53 to the Uninsured Motorist
 Coverage-Missouri.

 American Family timely appealed from the trial court’s judgment.

 Standard of Review

 Our standard of review for summary judgment is de novo. Green v. Fotoohighiam, 606

S.W.3d 113, 115 (Mo. banc 2020). In reviewing the trial court’s decision to grant summary

judgment, we apply the same criteria as the trial court in determining whether summary judgment

was proper. Id. “Summary judgment is only proper if the moving party establishes that there is

no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of

law.” Id. Because the case was submitted on stipulated facts entered into between the parties in

the proceedings before the trial court, “[t]he only question before us is whether the trial court made

the proper legal conclusion from the stipulated facts.” Cady v. Ashcroft, 606 S.W.3d 659, 665

(Mo. App. W.D. 2020) (internal quotation marks omitted).

 As with summary judgment, “‘[t]he interpretation of an insurance policy, and the

determination of whether coverage and exclusion provisions are ambiguous, are questions of law

that [we] review[ ] de novo.’” Kissinger v. Am. Fam. Mut. Ins. Co., 563 S.W.3d 765, 775 (Mo.

App. W.D. 2018) (quoting Mendenhall v. Prop. & Cas. Ins. Co., 375 S.W.3d 90, 92 (Mo. banc

2012)). “‘When interpreting an insurance policy, [we] give[ ] the policy language its plain

meaning, or the meaning that would be attached by an ordinary purchaser of insurance.’” Id. at

785-86 (quoting Doe Run Res. Corp. v. Am. Guarantee & Liab. Ins., 531 S.W.3d 508, 511 (Mo.

 6
banc 2017)). “If a policy is clear and unambiguous, we construe it as written.” Id. at 786. “If,

however, a policy is ambiguous, meaning that there is duplicity, indistinctness, or uncertainty in

the meaning of the language used in the policy so that it is reasonably open to different

constructions, we must construe the policy in favor of the insured.” Id. (internal quotation marks

omitted). “In determining whether an ambiguity exists, we must evaluate the policy as a whole

rather than focus on an isolated provision.” Id. (citing Manner v. Schiermeier, 393 S.W.3d 58, 65

(Mo. banc 2013)). “We will not create an ambiguity when none exists.” Id. (citing Doe Run Res.,

531 S.W.3d at 511).

 Analysis

 The parties agree that there are three policies; that the Declarations page of each policy

states $100,000 UM coverage; that the Declarations page of each policy expressly notes in

capitalized and bold letters – “PLEASE READ YOUR POLICY”; and that Jones is entitled to

$100,000 in UM coverage under the American Family policy on the Sequoia, the vehicle involved

in the accident. The parties also agree that the Declarations page on the policies for the Camry

and Cycle states $100,000 UM coverage, and that each policy references “ADDITIONAL

ENDORSEMENTS” and, specifically, an “UNINSURED MOTORIST” endorsement, which

contains an owned-vehicle exclusion. Further, the parties agree that Jones is entitled to stack an

additional amount of UM coverage under the Camry and Cycle policies. The dispute arises over

the maximum amount of UM coverage to which Jones is entitled under the Camry and Cycle

policies.

 In American Family’s sole point relied on, it asserts that the trial court erred in granting

summary judgment to Jones and in denying its cross-motion for summary judgment because the

court misapplied the law. Specifically, American Family contends that the owned-vehicle

 7
exclusion and the minimum-financial-responsibility clause, when read together with all other

applicable coverage provisions of the UM policies, unambiguously limits the UM coverage under

the Camry and Cycle policies to the $25,000 per person minimum required by the MVFRL.

Therefore, American Family argues that stacked UM coverage is limited to a maximum total of

$150,000 per person (i.e., $100,000 of UM coverage from the Sequoia Policy and $25,000 apiece

from the Camry and Cycle policies).

 Jones counters that the three policies issued to her by American Family are ambiguous in

that the policies promise UM coverage in the amount of $100,000 per person on the Declarations

page and in the insuring agreement, but the owned-vehicle exclusion in the Missouri UM

endorsement purports to completely exclude coverage. She argues that the policies then attempt

to reinstate a portion of that coverage by a duplicitous and confusing “separate provision on a

separate page using generic language that does not specifically reference the owned vehicle

exclusion.” Jones contends that she is entitled to stack $100,000 of UM coverage under each of

the three policies, for total UM coverage under the policies of $300,000.

 First, we note that Jones’s insistence that she has been promised “coverage” in the

Declarations page is a position that has been rejected by our Missouri Supreme Court. Instead,

our Missouri Supreme Court has made clear that the Declarations page of insurance policies do

not grant any coverage. Floyd-Tunnell v. Shelter Mut. Ins. Co., 439 S.W.3d 215, 221 (Mo. banc

2014). Rather, “the declarations are introductory and merely summarize the essential terms of the

policy.” Id. at 221 n.9. “[W]hen the policy is read as a whole, it is clear that a reader must look

elsewhere to determine the scope of coverage.” Id. at 221. “Definitions, exclusions, conditions

and endorsements are necessary provisions in insurance policies. If they are clear and

unambiguous within the context of the policy as a whole, they are enforceable.” Id.

 8
 “The purpose of UM coverage is to take the place of the liability coverage the insured

would have received had he or she been involved in an accident with an insured motorist.” Id. at

220. Under the MVFRL, an automobile liability insurance policy must provide UM coverage “for

the protection of persons insured thereunder who are legally entitled to recover damages from

owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease,

including death, resulting therefrom.” § 379.203.1.4 “Public policy flowing from this statutory

requirement requires that multiple uninsured motorist coverages must be allowed to be stacked.”

Hall v. Allstate Ins. Co., 407 S.W.3d 603, 607 (Mo. App. E.D. 2012). The Missouri Supreme

Court has rejected insurers’ attempts to completely bar an insured from receiving UM coverage,

finding that such an exclusion was “contrary to the public policy of § 379.203 and invalid.”

Shepherd v. Am. States Ins. Co., 671 S.W.2d 777, 780 (Mo. banc 1984).

 The owned-vehicle exclusion in the policies specifically provides that: “We do not provide

coverage for bodily injury sustained by any insured person: . . . while occupying . . . a motor

vehicle that is not insured for this [uninsured motorist] coverage under this policy if it is owned by

you or any resident of your household.” The exclusion purports to completely deny Jones UM

coverage if she owned and occupied a vehicle not insured for coverage under the policy. See

Copling v. Am. Fam. Mut. Ins. Co., S.I., 612 S.W.3d 226, 230 (Mo. App. S.D. 2020). The exclusion

concludes, however, in pertinent part: “If any uninsured motorist insurance law or financial

responsibility law determines that any exclusion is unenforceable, we will provide only the

minimum limits required by that law.”

 Under section 303.030.5, the required UM coverage is not less than $25,000 per person

under each of the two policies insuring Jones’s vehicles that were not involved in the accident.

 4
 All statutory references are to the REVISED STATUTES OF MISSOURI 2016, as supplemented.

 9
The owned-vehicle exclusion “is unenforceable up to the mandatory minimum amount of UM

coverage required under section 303.030.5, but is otherwise enforceable as to any coverage

exceeding the mandatory minimum amount.” Copling, 612 S.W.3d at 230. “The minimum-

financial-responsibility clause in each policy, therefore, provides UM coverage of $25,000.” Id.

(citing § 303.030.5). Policyholders are informed that coverage will be provided up to the statutory

minimum, here $25,000 per person, if the insured is injured while occupying a vehicle he or she

owns but is not covered by the same policy covering the vehicle involved in the accident.

 The trial court found that the owned-vehicle exclusion in the policies was unenforceable

because the policies were ambiguous, when read as a whole, in that the policies unequivocally and

unconditionally promise $300,000 in UM coverage in the Declarations pages, the insuring

agreement, the general conditions, and the limits of liability sections, “but then, in a manner that

would be confusing and ambiguous to a lay person attempt to take away coverage in the Exclusions

section of the Endorsement 53 to the Uninsured Motorist Coverage-Missouri.” We disagree.

 “Missouri law is well-settled that where one provision of a policy appears to grant coverage

and another to take it away, an ambiguity exists that will be resolved in favor of coverage.” Jones

v. Mid-Century Ins. Co., 287 S.W.3d 687, 689 (Mo. banc 2009). However, the mere presence of

an exclusion does not render an insurance policy ambiguous. Floyd-Tunnell, 439 S.W.3d at 221.

Furthermore, the exclusion provision appearing to take UM coverage away also expressly

references that any such exclusion is trumped by “any uninsured motorist insurance law or

financial responsibility law determin[ing] that any exclusion is unenforceable. . . .” And, in that

event, the exclusion provides that “we will provide only the minimum limits required by that law.”

Immediately following this language, the UM endorsement provides a “LIMITS OF LIABILITY”

 10
section in which it expressly notes that “in no event shall the amount we pay to the insured person

be reduced below the Missouri Motor Vehicle Financial Responsibility Law minimum limit.”

 Against this backdrop, we consider the entire policy and not just isolated provisions. Id. at

217. We find instructive other cases that have found similar and, in one instance, an identical

owned-vehicle exclusion enforceable and have determined that policyholders are only entitled to

the minimum amount of UM coverage required by the MVFRL with regard to the stacked policies.

 In Floyd-Tunnell, husband and wife were the named insureds on three automobile liability

insurance policies issued by Shelter Mutual Insurance Company for three vehicles they owned.

439 S.W.3d at 217. One policy covered the car husband was driving when he had a fatal

automobile accident with an uninsured motorist. Id. Each policy’s declarations page provided

that UM coverage was limited to $100,000 per person, but the policies also included an

owned-vehicle partial exclusion that further limited coverage to the $25,000 statutory UM

minimum, if the insured was injured while occupying a vehicle owned by the insured but not

covered under the policy. Id. Shelter paid $150,000: $100,000 under the policy on the vehicle

husband was driving when the accident occurred, and $25,000 under each of the other two policies.

Id. Wife argued that Shelter owed $75,000 under each of the other two policies because the partial

exclusion rendered the policies ambiguous in that the exclusion limited coverage granted

elsewhere in each policy. Id. The trial court ruled that the partial exclusion applied and was

unambiguous and granted Shelter’s motion for summary judgment. Id.

 The issue on appeal was whether the partial exclusion limited Shelter’s liability under two

of the policies to $25,000 per policy. Id. The Court found that “[t]he amount of UM coverage is

subject to the limitations and exclusions stated in the policies,” including the owned-vehicle partial

exclusion that further limited Shelter’s $100,000 per person liability for UM coverage. Id. at

 11
218-19. The Court concluded that “[t]he plain language of the partial exclusion limits Shelter’s

liability to $25,000 when the damages are sustained while the insured is occupying a vehicle that

is owned by the insured but is not the vehicle covered by the policy.” Id. at 220-21.

 In Johnson v. State Farm Mutual Automobile Insurance Co., 604 S.W.3d 875 (Mo. App.

S.D. 2020), the insured appealed the trial court’s grant of summary judgment in favor of State

Farm, upholding an owned-vehicle UM exclusion clause in two automobile insurance policies

covering vehicles not involved in the accident. Id. at 877. On appeal, the insured argued that

conflicts between the owned-vehicle exclusion and other provisions in the policies rendered the

policies ambiguous. Id. at 880. The Court stated that it was “compelled to follow the precedent”

set forth by the Missouri Supreme Court in the Floyd-Tunnell case. Id. at 881. The Court rejected

the insured’s argument and found the owned-vehicle exclusion policy language was “clear and

unambiguous when considered in light of a reading of the entire policies.” Id. The Court also

rejected the insured’s argument that reducing the UM coverage by the owned-vehicle exclusion

violated public policy. Id. at 882. As the Court noted, State Farm did not attempt to completely

bar the insured from UM coverage contained in his two additional policies; rather, State Farm

provided the insured with the full amount of UM coverage under the policy of the vehicle involved

in the accident, and also provided him, under his two other policies, with the minimum amount of

coverage required by Missouri law. Id.

 In Copling v. American Family Mutual Insurance Co., the insured had six policies that

contained an owned-vehicle exclusion in the UM coverage worded identically to the exclusion at

issue here. 612 S.W.3d at 228-29. The insured was involved in a motor vehicle collision with an

uninsured motorist. Id. at 228. American Family paid the insured the $100,000 limit of liability

for UM coverage under the policy of the vehicle she was driving at the time of the accident and

 12
$25,000 under each of the other policies. Id. The insured brought suit against American Family

for unpaid UM coverage benefits. Id. The insured and American Family filed competing motions

for summary judgment. Id. The material facts were uncontroverted, and “the only issue was

whether, as a matter of law, the policies provided for UM coverage benefits in excess of the

$225,000 that American Family had already paid.” Id. The insured argued that because of

ambiguity in the owned-vehicle exclusion, she was entitled to the $100,000 per person limit of

UM coverage as stated on the Declarations page of each policy. Id. at 229. American Family

countered that the policy provisions plainly and unambiguously provided for stacked coverage

only up to the minimum-financial-responsibility limits under Missouri law. Id. The trial court

granted American Family’s motion, denied the insured’s motion, and entered judgment in

American Family’s favor and against the insured. Id.

 On appeal, the Court concluded that the owned-vehicle exclusion and the minimum-

financial-responsibility clause, when read together with all other applicable coverage provisions,

excluded UM coverage for more than the $25,000 minimum required by Missouri’s financial

responsibility law when the insured owned and occupied a vehicle not insured for coverage under

the policy at issue. Id. at 231. The Court also concluded that “the plain and unambiguous language

of the any-other-insurance clause [did] not affect or preclude the exclusionary provisions giving

rise to the exclusion above that required amount and, indeed, confirm[ed] that they remain

‘unchanged’ in the event such other insurance exist[ed].” Id. at 231-32.

 We are bound to enforce unambiguous policy language as written. Floyd-Tunnell, 439

S.W.3d at 217; Johnson, 604 S.W.3d at 880. Consistent with case precedent interpreting similar

and even identical owned-vehicle exclusion clauses, we conclude that the owned-vehicle exclusion

is unambiguous and enforceable when considered within the context of the policy. Accordingly,

 13
the Camry and Cycle policies, insuring vehicles not involved in the accident, each permit coverage

up to the statutory minimum UM coverage limit of $25,000. See Floyd-Tunnell, 439 S.W.3d at

221 (finding exclusion “clearly and unambiguously” informed policyholders that coverage would

be limited to $25,000 if the insured was injured while occupying vehicle owned by insured but not

covered by policy); Johnson, 604 S.W.3d at 881 (finding exclusions in two additional policies

“clear and unambiguous” when the policy is read as a whole).

 Case precedent requires us to conclude that the insured should receive the statutory

minimum UM coverage required by the MVFRL on each vehicle owned by the insured, but not

involved in the accident. Floyd-Tunnell, 439 S.W.3d at 221; Johnson, 604 S.W.3d at 882; Copling,

612 S.W.3d at 231. The trial court misapplied the law in ruling that the owned-vehicle exclusion

was ambiguous and unenforceable.

 The point is granted.

 Conclusion

 The trial court’s judgment granting summary judgment to Jones is reversed, and the cause

is remanded with directions that the trial court enter judgment in favor of American Family

consistent with the relief sought in American Family’s motion for summary judgment and

consistent with our ruling today.

 /s/Mark D. Pfeiffer
 Mark D. Pfeiffer, Judge

Edward R. Ardini, Jr., Presiding Judge, and W. Douglas Thomson, Judge, concur.

 14