

# In the
# Missouri Court of Appeals
# Western District

SHELTER INSURANCE COMPANY,    )
                                     )
            Appellant,           )
                                     )      **WD85564**
     v.                           )      **OPINION FILED:**
                                     )      **MAY 23, 2023**
JOHN W. LONG, ET AL.,           )
                                     )
           Respondent.        )

### Appeal from the Circuit Court of Benton County, Missouri
### The Honorable Michael Brandon Baker, Judge

### Before Division Two: Alok Ahuja, Presiding Judge, Anthony Rex Gabbert, Judge, Thomas N. Chapman, Judge

Shelter Insurance Company ("Shelter") appeals the circuit court's Judgment which granted John W. Long, Tamala J. Henderson, Shane A. Colin, Cozzetta A. Chalfant, Roy S. Paxton, and Earl D. Paxton ("Respondents" collectively) summary judgment on Shelter's First Amended Petition for Declaratory Judgment. Shelter's Petition sought a declaration that Shelter owed no duty to defend or indemnify Long from an accident that resulted in the death of Earl S. Paxton. On appeal, Shelter contends the circuit court erred in granting summary judgment to Respondents, and denying summary judgment to Shelter, arguing that 1) Long is not an insured under the Policy issued by Shelter in that Long does not meet the Policy's definition of insured, and the Motor Vehicle Financial Responsibility Law does not require coverage for Long under the Policy, 2) the Policy's

Categories 1-4, which determine who is an insured, are unambiguous in that the terms are clearly defined and the use of modifiers does not create an ambiguity, 3) the bolding of terms within the Policy does not create an ambiguity in that the bolding of terms are used for headings and the terms within the Policy are clearly defined. We reverse and remand for further proceedings consistent with this opinion.

## Factual and Procedural Background

The relevant facts are not in dispute. On or about November 25, 2019, John Long was operating his 2005 Dodge Ram 2500 which he solely owned. Earl S. Paxton was operating a 2007 Toyota Prius. The two vehicles collided resulting in Earl S. Paxton's death. Earl S. Paxton's family members filed a lawsuit and claims against Long seeking damages.

Shelter issued a policy of insurance (the "Policy") to "Named Insured" Mary Van Dyne, Policy No.: 24-1-69-0-2261-2, with an effective policy period of September 14, 2019 to March 14, 2020. The Policy names Long as an "Additional Listed Insured." Long and Mary Van Dyne are not related through blood, marriage, or adoption. The "Vehicle" named for coverage under the Policy is a 2007 Toyota FJ Cruiser. Mary Van Dyne is the sole title owner of the 2007 Toyota FJ Cruiser.

Progressive Insurance notified Shelter of a claim for coverage under the Policy regarding Long's collision with Earl S. Paxton. The claims were made by the first-class beneficiaries of the Estate of Earl S. Paxton -- Cozzetta Chalfant, Roy Paxton, Earl D. Paxton, Shane A. Colin, and Tamara Henderson ("Beneficiaries" collectively).

2

On March 17, 2020, Shelter filed a Petition for Declaratory Judgment against Respondents seeking a declaration that (1) Shelter does not owe a duty to defend or indemnify Long regarding the motor vehicle accident involving Earl S. Paxton and (2) the Motor Vehicle Financial Responsibility Law does not require Shelter to provide minimum coverage for Long for the motor vehicle accident involving Earl S. Paxton.

On September 3, 2020, Shelter filed a Motion for Summary Judgment seeking a determination that Shelter does not owe a duty to defend or indemnify Long. On March 10, 2021, the circuit court entered its Order denying Shelter's motion. The court found the Policy ambiguous as to whether Long is an "insured" under the Policy.

On December 23, 2021, Respondents filed a Joint Motion for Summary Judgment seeking a determination that the Policy is ambiguous and that Shelter owes a duty to defend and indemnify Long. On June 16, 2022, the circuit court entered its Judgment granting Respondents' Joint Motion for Summary Judgment. The circuit court found the Policy ambiguous and, consequently, that the Policy must be construed to provide coverage for the accident. This appeal follows.

**Standard of Review**

The propriety of summary judgment is an issue of law which we review *de novo. ITT Comm. Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). We review the record in the light most favorable to the party against whom summary judgment was entered. *Id.* Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of

3

law. *Id. See also* Rule 74.04(c)(6). "The interpretation of an insurance policy and the determination whether coverage and exclusion provisions are ambiguous are also questions of law that this Court reviews *de novo.*" *Floyd–Tunnell v. Shelter Mut. Ins. Co.,* 439 S.W.3d 215, 217 (Mo. banc 2014).

Although orders denying a motion for summary judgment are generally not reviewable because they are not final judgments, such orders are reviewable when they are essentially intertwined with a related order granting summary judgment. *See Sauvain v. Acceptance Indem. Ins. Co.,* 339 S.W.3d 555, 568–69 (Mo. App. 2011). Here, both Respondents' and Shelter's motions for summary judgment hinged on the same critical issue – i.e., whether the Policy is ambiguous with regard to coverage for Long's accident in his 2005 Dodge Ram 2500 while named as an "Additional Listed Insured" on Mary Van Dyne's policy covering her 2007 Toyota FJ Cruiser.

## Points on Appeal

Shelter presents three points on appeal, all arguing that there is no ambiguity in the Policy as to that fact that Long is not insured under the Policy for his accident with Earl S. Paxton. Specifically, Shelter contends the circuit court erred in granting summary judgment to Respondents, and denying summary judgment to Shelter, because 1) Long is not an insured under the Policy because Long does not meet the Policy's definition of insured, and the Motor Vehicle Financial Responsibility Law does not require coverage for Long under the Policy, 2) the Policy's Categories 1-4, which determine who is an insured, are unambiguous in that the terms are clearly defined and the use of modifiers

4

does not create an ambiguity, 3) the bolding of terms within the Policy does not create an ambiguity in that the bolding of terms are used for headings and the terms within the Policy are clearly defined.

As with other types of contracts, the key to interpreting insurance contracts is determining whether the language is or is not ambiguous. *See Todd v. Missouri United Sch. Ins. Council,* 223 S.W.3d 156, 160 (Mo. banc 2007). "When there is ambiguity in an insurance policy, the Court must interpret the policy in favor of the insured." *Id.* (internal citation omitted). However, unambiguous insurance policies should be enforced as written. *Id.* An insurance policy is ambiguous "when there is duplicity, indistinctness, or uncertainty in the meaning of words used in the contract." *Krombach v. Mayflower Ins. Co.,* 827 S.W.2d 208, 210 (Mo. banc 1992). To determine whether the contract's language is clear, courts consider the language "in the meaning that would ordinarily be understood by the layman who bought and paid for the policy." *Id.* The courts should not interpret policy provisions in isolation, but instead should evaluate policies as a whole. *See Ritchie v. Allied Prop. & Cas. Ins. Co.,* 307 S.W.3d 132, 135 (Mo. banc 2009); *Dutton v. Am. Fam. Mut. Ins. Co.,* 454 S.W.3d 319, 324 (Mo. banc 2015).

The essential terms of an insurance contract are usually stated in abbreviated form on the "Declarations" page of the policy. *See Todd*, 223 S.W.3d at 160. The rest of the policy often contains terms that limit or narrow the broad coverage stated in the Declarations page, such as definitions, exclusions, endorsements, and other miscellaneous provisions. *Id.* at 163 ("Insurance policies are read as a whole, and the risk

5

insured against is made up of both the general insuring agreement as well as the exclusions and definitions."). Such limiting terms do not necessarily render the policy ambiguous so long as any conflicting clauses may be reasonably reconciled with the policy as a whole. *See id.* at 162–63. *See also Floyd–Tunnell v. Shelter Mut. Ins. Co.,* 439 S.W.3d 215, 221 (Mo. banc 2014); *Midwestern Indem. Co. v. Brooks,* 779 F.3d 540, 546 n.4 (8th Cir. 2015) ("There is no requirement that a limitation or exclusion appear on the declarations page absent policy language stating otherwise.") (citing *Naeger v. Farmers Ins. Co.,* 436 S.W.3d 654, 660 (Mo. App. 2014)).

*The Policy Language*

As relevant to this appeal, on Page 1 of the Policy Declarations, Mary Van Dyne is stated as the "Named Insured," and Mary Van Dyne and John Long are shown as "Additional Listed Insured[s]." On Page 2 of the Policy under "AUTOMOBILE INSURANCE POLICY" there is a definitions section which states:

> DEFINITIONS
> In this policy, the words shown in bold type have the meanings stated below unless a different meaning is stated in a particular coverage or endorsement. Words in bold type that are derived from a defined word have the same root meaning. The plural version of a defined word has the same meaning as the singular if it is also bolded. If any of these same words are used but not printed in bold type, they have their common dictionary meaning.

The Policy also provides on Page 6:

> AMENDED AND ADDITIONAL DEFINITIONS USED IN VARIOUS POLICY SECTIONS
> Some coverage parts and endorsements contain definitions that differ from those defining the same words in other coverages. With respect to the

handling of a specific **claim**, the definition provided in the coverage being considered controls when it differs from a definition of the same word provided in other coverage.

On that same page, the Policy further provides under "TITLES OF PARAGRAPHS" that "The titles of the various paragraphs of this policy and of any endorsements to it are inserted solely for ease of reference and do not in any way change the legal effect of the provision to which they relate."

A "**Named insured**" is defined within the DEFINITIONS section as "any **person** listed in the **Declarations** under the heading 'Named Insured'. **Persons** listed under other headings are not **named insureds** unless they are also listed under the heading 'Named Insured'." "**You**" is defined within the Policy as "any **person** listed as a **named insured** in the **Declarations** and, if that **person** is an **individual**, his or her **spouse**." "**Described auto**" is defined in relevant part as "the vehicle described in the **Declarations**, but only if a **named insured owns** that vehicle. "**Non-owned auto**" is defined as:

> [A]ny **auto** being **used**, **maintained**, or **occupied** with **permission**, other than:
> (a) The **auto** listed in the **Declarations**;
> (b) An **auto owned** by any **insured**, **spouse**, or a **resident** of any **insured's** household; or
> (c) An **auto** that any **insured**, **spouse**, or a **resident** of any **insured's** household has general consent to use.
> A **rental auto** is a **non-owned auto** if it is not an auto described by (a), (b), or (c) above, is not a **temporary substitute auto**, and otherwise meets the definition of **rental auto**.

On Page 9 of the Policy under "ADDITIONAL DEFINITIONS USED IN COVERAGE A AND COVERAGE B" it states that,

7

(2)     **Insured** means a **person** included in one of the following categories, but only to the extent stated in that category.
CATEGORY 1
**You** are an **insured** for **claims** resulting from **your ownership**, **maintenance**, or **use** of the **described auto**; and **your use** of **non-owned autos**. The maximum limit of **your** coverage **is** the full amount stated in the **Declarations**.
CATEGORY 2
(a) **Relatives**, and
(b) **Individuals** listed in the **Declarations** as an 'additional listed insured' who do not **own** a **motor vehicle**, and whose **spouse** does not own a **motor vehicle**;
are **insureds** for **claims** resulting from their **use** of the **described auto** and **non-owned autos**. The maximum limit of their coverage is the full amount stated in the **Declarations**.
CATEGORY 3
(a) **Individuals** who would meet the definition of **relative** except for the fact that they **own** a **motor vehicle**, or their **spouse owns** a **motor vehicle**; and
(b) **Individuals** listed in the **Declarations** as an 'additional listed insured' who **own** a **motor vehicle**, or whose **spouse owns** a **motor vehicle**;
are **insureds** for **claims** resulting from their **use** of the **described auto**. The maximum limit of their coverage is the full amount stated in the **Declarations**.
CATEGORY 4
**Individuals** who have **permission** or **general consent** to **use** the **described auto** are **insureds** for **claims** resulting from that **use**. The maximum limit of their coverage is the minimum amount required by the **financial responsibility law** applicable to the **occurrence**, regardless of the amount stated in the **Declarations**. With respect to these **insureds**, we provide only those coverages required by the applicable **financial responsibility law**.

*Analysis*

The question here is whether a layperson, or Mary Van Dyne as the layperson

purchasing the Policy, would have expected the Policy for her 2007 Toyota FJ Cruiser,

for which Mary Van Dyne was the Named Insured and John Long (neither a relative nor a

8

spouse of Mary Van Dyne) was an Additional Listed Insured, covered the accident John Long had in his 2005 Dodge Ram 2500. We find that no reasonable layperson could interpret the policy language to provide coverage for John Long's November 25, 2019 collision with Earl S. Paxton.

The word "Insured," as defined in the Policy language of Mary Van Dyne's Policy, is unambiguous with regard to its applicability to Long. Long is not an "insured" under Category 1 because he does not fit the "you" or "your" definitions as he is not the Named Insured. At the time of the accident, Long was not operating the "described auto" because he was not driving Mary Van Dyne's 2007 Toyota FJ Cruiser. Long was also not driving a "non-owned auto" at the time of the accident because he owned the 2005 Dodge Ram 2500 involved in the accident. Long is not an "insured" under Category 2 because he is, (a) not a relative of Mary Van Dyne, and (b) is an "additional listed insured" who owns a motor vehicle (the 2005 Dodge Ram 2500 involved in the accident). Further, Long was not driving the described auto or a non-owned auto. Long is not an "insured" under Category 3 because, (a) he does not meet the definition of a "relative" and (b) he is an "additional listed insured" who owns a motor vehicle, but he was not using Mary Van Dyne's 2007 Toyota FJ Cruiser at the time of the accident. Long is not an "insured" under Category 4 because the claims did not result from Long's use of the "described auto" which is Mary Van Dyne's 2007 Toyota FJ Cruiser.

Respondents argue that the "uncertain and indistinct deployment/use of the word 'insured' throughout the Shelter Policy leads to a slew of irreconcilable issues in the

9

Shelter Policy in regards to how a lay person would understand that particular term."

Respondents contend that the term "insured" is "ill-defined and subject to numerous possible meanings and interpretations" rendering the entire Policy ambiguous such that coverage must be provided to Long as a matter of law. Yet, the very nature of an automobile insurance policy is to provide insurance coverage for specific automobiles and specific individuals. A reasonable layperson would understand that a policy purchased to cover accidents occurring in a 2007 Toyota FJ Cruiser may not cover accidents occurring in a 2005 Dodge Ram 2500. A reasonable layperson would understand that, if an accident occurring in a 2005 Dodge Ram 2500 *is* covered by a policy providing coverage for a 2007 Toyota FJ Cruiser, it will only apply under limited circumstances. A reasonable layperson would also understand that, a Named Insured may have different coverage under the Policy than an Additional Listed Insured. Given these things, a reasonable layperson necessarily understands, therefore, that the term "insured" will be defined differently in different parts of the policy to differentiate between the various circumstances under which an individual is, in fact, "insured."

Respondents additionally argue that the use of bolded terms create an ambiguity within the Policy because bolded words are to have special meaning. Respondents argue that "insured" is inconsistently bolded throughout the Policy which causes "confusion and uncertainty in the coverage terms of the Policy as a whole." Yet, Respondents agree that the term "insured" is not defined within the DEFINITIONS section of the Policy such that it can be argued that the word has a specific meaning that must be applied to

10

every aspect of the Policy. That Policy states that, if a word is bolded but undefined, it carries a "common dictionary meaning." Even if "insured" was defined in the initial DEFINITIONS section, however, that section provides that the bolded words carry the definition provided unless a different meaning is stated in a particular coverage or endorsement. Under "AMENDED AND ADDITIONAL DEFINITIONS USED IN VARIOUS POLICY SECTIONS" it states that, "with respect to the handling of a specific **claim**, the definition provided in the coverage being considered controls when it differs from a definition of the same word provided in other coverage." Under "ADDITIONAL DEFINITIONS USED IN COVERAGE A AND COVERAGE B" "insured" is defined within the provisions of the Policy that describe coverage and coverage limitations. The definition provided for "insured" in this part of the Policy controls who is insured under Coverage A and Coverage B. This is not difficult for a layperson to understand.

Contrary to Respondents' averments, the fact that "additional listed insured" is not defined in the DEFINITIONS section of the Policy is of no significance, nor does it create an ambiguity. As relevant to this appeal, "additional listed insured" is essentially defined in the Declarations as "John Long." Simply replace "additional listed insured" with "John Long" where it is found within the Policy and John Long's coverage, or lack thereof, is clear and unambiguous.[1]

---

[1] *See Floyd-Tunnell v. Shelter Mut. Ins. Co.*, 439 S.W.3d at 219 (discussing that a simple method to visibly demonstrate the impact of a severability clause in an insurance agreement is to insert the name of the applicable insured).

Respondents also place great significance on the fact that "Additional Listed Insured" is bolded within the Declarations. The bolded "Additional Listed Insured" is very clearly a heading.[2] Nevertheless, even if it is a separately bolded phrase within the Policy, not all bolded words are given a definition within the DEFINITIONS section and the Policy makes this clear. Here, a reasonable layperson would understand that within this Policy, and as relevant to this appeal, "Additional Listed Insured" simply means John Long. Contrary to Respondents' averments, an average layperson would not read the Policy and conclude that they are an "insured" for all possible coverage within the policy because they are an "additional listed insured." Nor would a reasonable layperson conclude that the term "insured" under Coverage A and B is simply an additional definition meant to supplement or add to the scenarios where an "additional listed insured" already enjoys other coverage. Any reasonable layperson would understand the ADDITIONAL DEFINITION language to be limiting and exclusionary, and not supplemental, particularly where it applies only to COVERAGE A and COVERAGE B. The Policy expressly states under "AMENDED AND ADDITIONAL DEFINITIONS USED IN VARIOUS POLICY SECTIONS" that, "with respect to the handling of a specific **claim**, the definition provided in the coverage being considered controls when it differs from a definition of the same word provided in other coverage."

_____

[2] The Policy states on Page 3 that "Named Insured" is a "heading." "Additional Listed Insured" as used on the Declarations page is, therefore, also a heading.

12

"[T]he mere presence of an exclusion does not render an insurance policy ambiguous." *Mendota Ins. Co. v. Lawson*, 456 S.W.3d 898, 906 (Mo. App. 2015).

> Insurance policies customarily include definitions that limit words used in granting coverage as well as exclusions that exclude from coverage otherwise covered risks. While a broad grant of coverage in one provision that is taken away by a more limited grant in another may be contradictory and inconsistent, the use of definitions and exclusions is not necessarily contradictory or inconsistent.... ***Definitions, exclusions, conditions and endorsements are necessary provisions in insurance policies***. If they are clear and unambiguous within the context of the policy as a whole, they are enforceable.

*Floyd-Tunnell v. Shelter Mut. Ins. Co.*, 439 S.W.3d 215, 221 (Mo. banc 2014) (internal quotation marks and citation omitted; emphasis original).

And, while Respondents point to language under "ADDITIONAL COVERAGES" that states that, "Each of the coverages, listed above, applies initially to all **insureds**[,]" arguing that this portion of the Policy guarantees all insureds that Shelter will defend against any claim, prior to this statement and immediately below the title "ADDITIONAL COVERAGES" the Policy states: "We will take the following actions and pay the following costs and expenses only if they result from a **claim** covered by Coverage A or Coverage B." As the unambiguous Policy language shows that Long has no coverage under Coverage A or Coverage B, no reasonable layperson would conclude that the Policy guarantees Long a defense under the ADDITIONAL COVERAGES section. To create the ambiguities Respondents argue are present in the Policy, Respondents fail to consider the Policy as a whole or read specific Policy provisions in context.

13

Because we find the terms of the Policy unambiguous as to its lack of coverage for Long, we conclude that the circuit court erred in granting summary judgment to Respondents, and denying summary judgment to Shelter. Shelter's points on appeal are granted.[3]

## Conclusion

We conclude that the circuit court erred in granting summary judgment to Respondents on its claim that Long was entitled to coverage due to ambiguities in the Policy, and denying summary judgment to Shelter on its claim that the Policy does not provide coverage for Respondents' claims against Long. We reverse the circuit court's judgment granting summary judgment to Respondents, reverse the circuit court's Order denying summary judgment to Shelter, and remand with instructions to enter judgment in favor of Shelter.

_____

Anthony Rex Gabbert, Judge

All concur.

---

[3] We need not address, and take no position on, Shelter's discussion within its first point regarding the Motor Vehicle Financial Responsibility Law. Respondents state that their "claims in favor of coverage…are not premised or dependent on mandatory coverage required by the MVFRL but rather on the coverage required by the (ambiguous) terms of the Shelter Policy[.]"